# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS, MIDLAND/ODESSA DIVISION

VIRTAMOVE, CORP.,

        Plaintiff

v.

GOOGLE LLC,

        Defendant

Case No. 7:25-cv-00347-DC-DTG

## **<u>DEFENDANT GOOGLE'S MOTION TO DISMISS COMPLAINT</u>**

## NOTE ON CITATIONS

- References to VirtaMove's Complaint (Dkt. 1) are designated by "Compl." followed by paragraph or exhibit number.

- The patent-in-suit, United States Patent No. 7,774,762 ("the '762 patent"), was attached as Exhibit 1 of the Complaint. Reference to the patent-in-suit is indicated by column and line number, or by claim number.

- All emphases are added unless otherwise noted.

## <u>TABLE OF CONTENTS</u>

**Page**

FACTUAL BACKGROUND ................................................................................................1

    I.     The Complaint .................................................................................................1

    II.    The '762 Patent .............................................................................................2

LEGAL STANDARD ....................................................................................................5

    I.     Dismissal Under Rule 12(B)(6) ....................................................................5

    II.    Ineligible Subject Matter ...............................................................................5

    III.   Direct And Indirect Infringement ..................................................................6

ARGUMENT ...............................................................................................................7

    I.     The '762 Patent Is Invalid Under 35 U.S.C. § 101 ......................................7

         A.     The '762 Patent Is Directed To An Abstract Idea.......................7

              1.     The Claims Recite Results-Oriented Functional Language, as in Cases Where Courts Found Claims Directed to an Abstract Idea ..............................................................7

              2.     VirtaMove's Assertions in the Complaint Are of No Import ........11

         B.     The Asserted Patent Claim Adds Nothing Inventive .................................12

              1.     The Claim Limitations Are Well-Known, Conventional, and Routine ........................................................................12

              2.     Claim 17 Does Not Recite *How* to Perform Any of the Recited Limitations ...........................................................13

    II.    VirtaMove's Direct Infringement Allegations Should Be Dismissed .................15

    III.   VirtaMove's Indirect Infringement Allegations Should Be Dismissed.................16

         A.     VirtaMove Does Not Plead The Elements of Induced Infringement.........16

         B.     VirtaMove Does Not Plead The Elements of Contributory Infringement...............................................................................18

         C.     VirtaMove Does Not Plead Pre-Suit Knowledge ......................................19

CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter,*
620 F. App'x 934 (Fed. Cir. 2015) ...................................................................17

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.,*
No. W:13-cv-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ..............................6, 7, 17

*Affinity Labs of Texas, LLC v. Amazon.com Inc.,*
838 F.3d 1266 (Fed. Cir. 2016)...............................................................10, 17

*Aftechmobile Inc. v. Salesforce.com, Inc.,*
853 F. App'x 669 (Fed. Cir. 2021) ...........................................................10, 11

*ALD Soc. LLC v. Google LLC,*
No. WA-22-CV-972-FB, 2023 WL 3184631 (W.D. Tex. Mar. 17, 2023).......................15, 16

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
573 U.S. 208 (2014).......................................................................... *passim*

*Artrip v. Ball Corporation,*
735 F. App'x 708 (Fed. Cir. 2018) ...........................................................18, 19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...............................................................................5

*Badeaux v. BP Expl. & Prod.,*
790 F. App'x 618 (5th Cir. 2019) ..................................................................5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................................5

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018)....................................................................7

*Beteiro, LLC v. DraftKings Inc.,*
104 F.4th 1350 (Fed. Cir. 2024) .................................................................11

*Bilski v. Kappos,*
561 U.S. 593 (2010)...............................................................................5

*Bot M8 LLC v. Sony Corp. of Am.,*
4 F.4th 1342 (Fed. Cir. 2021) ...................................................................15

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
  113 F.4th 1359 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 1924, 221 L. Ed. 2d
  664 (2025) ...........................................................................................................9

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018).................................................................12, 13

*Castlemorton Wireless, LLC v. Bose Corp.*,
  No. 6:20-CV-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020) ..........................19

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l., Inc.*,
  631 F.3d 1279 (Fed. Cir. 2011)........................................................................6

*Chamberlain Grp. v. Techtronic Indus. Co.*,
  935 F.3d 1341 (Fed. Cir. 2019)...................................................................13, 15

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019).......................................................................5, 12

*Commil USA, LLC v. Cisco Sys., Inc.*,
  575 U.S. 632 (2015).......................................................................................19

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014).........................................................................5

*CTD Networks, LLC v. Amazon.com, Inc.*,
  688 F.Supp.3d 436 (W.D. Tex. 2023)...............................................................6

*Diamond v. Diehr*,
  450 U.S. 175 (1981).......................................................................................11

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006).........................................................................6

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)................................................................9, 13, 14

*Eolas Technologies Incorporated v Amazon.com Inc., et. al.*,
  2024 WL 371959 (Fed. Cir. Feb. 1, 2024), *cert. denied,* 145 S. Ct. 149 (2024) ....................10

*Fernandez-Montes v. Allied Pilots Ass'n*,
  987 F.2d 278 (5th Cir. 1993) ............................................................................5

*Fla. Rsch. Found., Inc. v. Gen. Elec. Co*,
  916 F.3d 1363 (Fed. Cir. 2019).....................................................................9, 10

*Free Stream Media Corp. v. Alphonso Inc.*,
  996 F.3d 1355 (Fed. Cir. 2021).......................................................................13

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010)........................................................................7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)..............................................................................19

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
    60 F.4th 1349 (Fed. Cir. 2023) ....................................................8, 9, 14

*Heidary v. Amazon.com, Inc.*,
    No. 2024-1580, 2024 WL 4489918 (Fed. Cir. Oct. 15, 2024)................15

*Inhale, Inc v. Gravitron, LLC*,
    No. 1-18-CV-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) ..................18

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)........................................................12

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)..........................................................8

*Intell. Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017)....................................................8, 13

*Intell. Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016).....................................................8, 9

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018)........................................................10

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*,
    No. 6:20-CV-00318-ADA, 2021 WL 4555802 (W.D. Tex. Oct. 4, 2021)............20

*LendingTree, LLC v. Zillow, Inc.*,
    656 F. App'x 991 (Fed. Cir. 2016) ....................................................14

*Miller Mendel, Inc. v. City of Anna, Texas*,
    598 F.Supp.3d 486 (E.D. Tex. 2022)..................................................11

*Parity Networks, LLC v. Cisco Sys., Inc.*,
    No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. Jul. 26, 2019)............18

*Parus Holdings Inc. v. Apple Inc.*,
    No. 6:19-cv-432-ADA, Dkt. 28, 35 (W.D. Tex. Feb. 20, 2020)................19

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017)...................................................7, 9, 10

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
    987 F.3d 1358 (Fed. Cir. 2021)........................................................................6

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016)......................................................................11

*TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*,
    657 F.App'x 991 (Fed. Cir. 2016) ..................................................................15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017).....................................................................10

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ....................................................................8, 9

*VirtaMove v. HPE*,
    Case 2:24-cv-00093-JRG, Dkt. 222 (E.D. Tex. Jul. 23, 2025) (Ex. K)................16

*In re VirtaMove, Corp.*,
    No. 2025-130, 2025 WL 2618803 (Fed. Cir. Sept. 11, 2025) .................................2

*VirtaMove, Corp. v. Google LLC*,
    Case No. 7:24-cv-00033-DC, Dkt. 1 (Ex. C)...............................................1, 2, 16

**Statutes**

35 U.S.C. § 101 ...................................................................................... *passim*

35 U.S.C. § 271(a) ...........................................................................................6

35 U.S.C. § 271(b) .........................................................................................17

35 U.S.C. § 271(c) .........................................................................................18

35 U.S.C. § 287 .............................................................................................20

**Other Authorities**

Gartner "Cloud Computing" ..........................................................................11

https://docs.docker.com/reference/dockerfile/#env (Ex. L).............................16

RULE 12(B)(6) ...............................................................................................5

U.S. Patent No. 7,774,762...................................................................... *passim*

U.S. Patent Nos. 7,519,814 ......................................................................1, 3, 4

U.S. Patent No. 7,774,762 is ineligible under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). The '762 patent, the sole patent in this case and which predates *Alice*, is directed to the abstract idea of distributing applications with files that are used in place of, or to filter the output of, local application libraries. The components of the claimed method are nothing more than functional recitations of conventional technology with no new hardware, software, or methods even suggested. Courts routinely invalidate these types of functional patent claims under § 101.

Further, VirtaMove does not provide plausible factual allegations of direct infringement. Specifically, VirtaMove does not plausibly allege that the Accused Products distribute applications with files that are used to filter the output of local application libraries, the supposed claimed innovation of the '762 patent. VirtaMove also fails to allege key legal requirements for indirect infringement, including identifying a direct infringer, specific intent for induced infringement, a "component" that is a material part of the invention, and the lack of substantial non-infringing uses for contributory infringement. VirtaMove also fails to adequately plead the knowledge requirement for pre-suit indirect infringement.

The Court should grant Google's Motion and dismiss VirtaMove's Complaint.

## FACTUAL BACKGROUND

### I.    THE COMPLAINT

The sole asserted '762 patent is a continuation-in-part of, and incorporates the specifications of, U.S. Patent Nos. 7,519,814 (Ex. A) and 7,784,058 (Ex. B). 1:10-24. VirtaMove previously sued Google for infringement of these same two patents. *VirtaMove, Corp. v. Google LLC*, Case No. 7:24-cv-00033-DC ("*VirtaMove I*"), Dkt. 1 (Ex. C) ¶¶ 12, 21.[1] *VirtaMove I* was

---

[1] Google moved to dismiss the current *VirtaMove I* complaint on July 15, 2025. This motion is fully briefed and pending. *VirtaMove I*, Dkt. 110-1 (Ex. H), 111 (Ex. I), 113 (Ex. J).

filed in this District in January 2024, but it was transferred to NDCA in May 2025. *Id*., Dkt. 1, 86 (Ex. F), 102 (Ex. G).[2] *VirtaMove I* accused Migrate to Containers in the Complaint, and GKE and Cloud Run in the infringement contentions, products VirtaMove also accuses in this case. *Id*., Dkt. 48 (Ex. D) at 1, Dkt. 59 (Ex. E) at 7, 9; Compl. Ex. 2 at 1. While VirtaMove also purports to accuse Google Container Registry, Google Artifact Registry, and Google Cloud Platform (a term that described a suite of numerous cloud products at Google) of infringing the '762 patent, its infringement chart does not address or even mention those products or services. *Id*.

## II. THE '762 PATENT



**Fig. 3**
**Prior Art**

The '762 patent relates to running software applications on incompatible computer platforms. 1:28-32. Figure 3 of the patent (left) describes a prior art computer system. As relevant here, the specification explains the kernel is part of the operating system ('058 patent (incorporated by reference) at 5:22-24) and "controls access to hardware services" such as CPU time, memory, file activity, and network bandwidth. 7:52-53, 12:31-32. Application libraries provide access to those operating system services and are thus "required by an application in order to run." 7:51-52; '058 patent at 2:44-45. For example, the Mac version of Microsoft Word running on macOS would use macOS application libraries to interact with the macOS kernel to print a file, save a file, access the Internet, etc. 6:3-13. If the Mac version of Word were installed on a Windows platform, it would still try to use

---

[2] VirtaMove's Petition for Writ of Mandamus as to the transfer order was denied. *In re VirtaMove, Corp.*, No. 2025-130, 2025 WL 2618803 (Fed. Cir. Sept. 11, 2025). Its motion for rehearing is pending.

macOS application libraries—because it is programmed to run on macOS. Even if a corresponding Windows application library were located, it would likely return different data than the Mac version of Word expects, and thus cause the application to fail. '058 patent at 2:44-45.

The claimed invention purports to address this problem by adding "filtered system services" to the prior art (Fig. 3), a.k.a. "filters," in Figure 5 (right). 7:48-58, 10:27-36. A filter is "called before the original kernel system call handler" and "modifies one or more values returned by the OS" via its kernel. 9:25-27, 10:9-11. In this manner, output from the incompatible kernel is altered to match the format expected by the application, as if it were running on a compatible computing platform. 1:52-55. For example, the Mac version of Word running on Windows would use filters to modify data returned from the Windows kernel to match data that would have been returned by the macOS kernel, enabling the application to use it.



**Fig. 5**

The '762 patent further discloses that an application may execute its own version of an application library ***instead of*** the corresponding library provided by the underlying computer platform. 2:25-28, 3:14-18.[3] In other words, rather than altering the output from the Windows application library, the Mac version of Word running on Windows may include and use one or more of the macOS application libraries upon which it relies. The incorporated '814 patent specification explains that applications may require different, mutually exclusive libraries on the

---

[3] The patent alternately refers to "application libraries" as "shared libraries." '058 patent at 2:44-50. The patent further uses "[s]ystem files" to refer to shared libraries along with configuration files. 5:10-12. While configuration files are discussed at some length in the specification (*e.g.,* 5:30-37, 7:21-33, Figs. 2 and 3), they are not recited within claim 17.

same computer. '814 patent at 1:38-50. For example, if a given version of Word is intended to run on macOS version 14 (Sonoma) and a given version of PowerPoint is intended to run on macOS version 15 (Sequoia), then the two applications may not be able to run on the same computer.[4] The imported '814 patent specification purports to address this problem by including the required libraries with the application distribution, then using those libraries in place of the corresponding library provided by the operating system.[5] *Id.* at 6:59-7:3.

Asserted claim 17 of the '762 patent includes both of these purported advancements:

| | |
|---|---|
| 17. In a system having a first software application, which is designed for execution on a first computer platform, a method of executing said first software application on an incompatible computer platform in which the first software application is not intended to execute, said first software application including an object executable by a local operating system of the incompatible computer platform for performing a task related to a service, the incompatible computer platform including a processor, an operating system including a local kernel residing on the incompatible computer platform, and a set of associated local system files compatible with the local kernel and the processor of the incompatible computer platform, the method comprising: | The preamble recites the prior art system in which the claimed invention executes. *See supra* and Fig. 3. |
| a) providing a computer readable set of first files, comprising a first group of files that include the first software application, designed to execute on the first computer platform and a second group of files that are distributed with or are specific to an operating system required to execute the first software application; | Files used for the limitations below. |
| b) in the execution of the first software application on the incompatible computer platform using said second group of files in place of the associated local system files normally used to perform a same task, which are resident on the incompatible computer platform as part of the operating system, and, | Execute files **in place of** OS system files |
| c) executing on the second incompatible computer platform runtime software for managing a dynamic state and file location of the first software application, the runtime software including a kernel module resident in kernel mode and at least one application filter library resident in user mode and filtering one or more system service requests made by the first software application and providing values from the at least one application filter library which is | **Filter** the output provided by the underlying operating system |

---

[4] *E.g.*, if they rely on the same application library to access the hard drive, then Sonoma's library may not work with PowerPoint, while Sequoia's library may not work with Word.

[5] *E.g.*, Word would include the Sonoma libraries it needs, while PowerPoint would include the Sequoia libraries it needs. Since each application will execute its own libraries rather than those provided by the operating system, they can supposedly coexist on the same computer.

| provided in addition to the local operating system libraries to modify values that otherwise would have been returned by the local operating system in the absence of said filtering one or more system service requests from the first software application, and executing the first software application by accessing files from first set of files in place of operating system files and wherein predetermined values are provided instead of values related to an identity of the incompatible computer platform. | |
|---|---|

## **LEGAL STANDARD**

### I.    DISMISSAL UNDER RULE 12(B)(6)

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief *that is plausible on its face.*'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must "accept all 'well-pleaded facts' as true and construe the complaint in the light most favorable to the plaintiff," a court is not required to accept "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Badeaux v. BP Expl. & Prod.*, 790 F. App'x 618, 620 (5th Cir. 2019) (cleaned up). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

### II.    INELIGIBLE SUBJECT MATTER

Whether a patent covers patentable subject matter under § 101 is a "threshold" question of law. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Thus, "[s]ubject matter eligibility under § 101 may be determined at the Rule 12(b)(6) stage of a case." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019). Claim construction is not a prerequisite to a determination under § 101 at the pleadings stage.[6] *Content Extraction & Transmission LLC v. Wells Fargo Bank,*

---

[6] Google is not aware of any claim construction issues that would preclude a ruling on patentability on a motion to dismiss, much less any terms for which their construction could make the claims not abstract or having an inventive step. This is particularly true given the apparent very broad interpretation of the patent by VirtaMove in the Complaint.

*Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). *Alice* sets forth a two-step test for patent eligibility under § 101. 573 U.S. at 217-18. First, the Court must determine whether the claims are directed to one of the three patent ineligible concepts under § 101: laws of nature, natural phenomena, or abstract ideas. *Id.* at 217. If so, the Court must then "consider the elements of each claim both individually and as an ordered combination to determine whether additional elements transform the nature of the claim into a patent-eligible application," which the Supreme Court has described as a "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (cleaned up).

## III.   DIRECT AND INDIRECT INFRINGEMENT

To succeed on a direct infringement claim, Plaintiff must "plead facts that show the defendant 'makes, uses, offers to sell, or sells' a *complete* patented invention." *CTD Networks, LLC v. Amazon.com, Inc.*, 688 F.Supp.3d 436, 444 (W.D. Tex. 2023) (quoting 35 U.S.C. § 271(a))(emphasis in original). "[T]o 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Id.* (quoting *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l., Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011)). Infringing by "making" or "selling" a system requires a *complete* infringing system: "one may not be held liable under § 271(a) for 'making' or 'selling' less than a complete invention." *Id.* (quoting *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1368 (Fed. Cir. 2021)).

"To succeed on its induced infringement claim, Plaintiff must allege facts showing that [Defendant]: (1) had actual knowledge of the patent; (2) knowingly induced a third-party to infringe the patent; and (3) had specific intent to induce the patent infringement." *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, No. W:13-cv-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006)). To succeed

on a contributory infringement claim, "the patent owner must demonstrate: '1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention.'" *Id.* at 8 (quoting *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

## ARGUMENT

### I.    THE '762 PATENT IS INVALID UNDER 35 U.S.C. § 101

The Complaint only asserts infringement of claim 17 of the '762 patent. Compl., Ex. 2. It does not distinguish any non-identified claims, including dependent claims. Google therefore treats Claim 17 as representative for this Motion, just as VirtaMove has done in the Complaint.[7] While it would be inappropriate for VirtaMove to make arguments about claims not specifically asserted in the Complaint, should it do so, Google reserves the right to address those arguments in its Reply.

#### A.    The '762 Patent Is Directed To An Abstract Idea

##### 1.    The Claims Recite Results-Oriented Functional Language, as in Cases Where Courts Found Claims Directed to an Abstract Idea

The '762 Patent is directed to the abstract idea of distributing applications with files that are used in place of, or filter the output of, local application libraries. While lengthy, the claims are recited in highly generic terms, focusing on "an abstract end-result," not "a specific means or method for improving technology." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (citation omitted). Claim 17 recites a computer platform with generic computer elements such as a processor, an operating system, a software application, an object executable, a kernel, and system files. The specification acknowledges that these components are all generic and

---

[7] As the Federal Circuit has explained, "[c]ourts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the . . . claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

part of the prior art. As detailed above, comparing Figs. 3 and 5 shows that the claimed invention lies in filtering calls between the application libraries and the kernel, and that all other claim elements are prior art. *See also* 5:59-6:13 (referring to prior art Fig. 1); '058 patent at 2:44-50.

Courts have routinely found that claims that apply filtering to elements of a computing system are abstract. *Intell. Ventures I LLC v. Symantec Corp.* found that claims related to email filtering were abstract where there was "no restriction on how the result is accomplished" and the "mechanism ... is not described." 838 F.3d 1307, 1316 (Fed. Cir. 2016) (citation omitted). *Intell. Ventures I LLC v. Cap. One Fin. Corp.* found claims which filtered one XML format into another XML format were directed to "the abstract idea … of organizing, displaying, and manipulating data of particular documents[,]" with XML merely "limit[ing] the invention to a technological environment for which to apply the underlying abstract concept." 850 F.3d 1332, 1340-41 (Fed. Cir. 2017); *see also Intell. Ventures I LLC v. Erie Indem. Co.,* 850 F.3d 1315, 1327 (Fed. Cir. 2017) ("We have previously held other patent claims ineligible for reciting similar abstract concepts that merely collect, classify, or otherwise filter data.").

Courts have also found claims which replace one resource or input with another within a computing system are abstract. For instance, *Universal Secure Registry LLC v. Apple Inc.* found that claims "directed to a method for enabling a transaction between a user and a merchant, where the merchant is given a time-varying code instead of the user's secure (credit card) information" were directed to an abstract idea. 10 F.4th 1342, 1349 (Fed. Cir. 2021). *Hawk Tech. Sys., LLC v. Castle Retail, LLC* found that claims reciting, among other things, "using an analog-to-digital converter" to replace analog video with digital video "directed to the abstract idea of 'storing and displaying video[,]'" rejecting the patent holder's argument that because "the claims themselves do not disclose performing any 'special data conversion' or otherwise describe how the alleged

goal of 'conserving bandwidth while preserving data' is achieved." 60 F.4th 1349, 1353, 1356-57 (Fed. Cir. 2023). And *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co*. found that a claim reciting "converting said physiologic treatment data from a machine specific format into a machine independent format" was similarly abstract. 916 F.3d 1363, 1366, 1368 (Fed. Cir. 2019).

Moreover, that the '762 patent employs two abstract ideas—filtering resources and replacing resources—does not save it from *Alice*, because "[a]dding one abstract idea … to another abstract idea … does not render the claim non-abstract." *RecogniCorp*, 855 F.3d at 1327; *see also Universal Secure Registry,* 10 F.4th at 1357 ("using three or more conventional authentication techniques to achieve a higher degree of security is abstract"); *Broadband iTV, Inc. v. Amazon.com, Inc.,* 113 F.4th 1359, 1368 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 1924, 221 L. Ed. 2d 664 (2025) ("the combination of two abstract ideas does not render an abstract idea less abstract"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (finding a "combination of [] abstract-idea processes" to be abstract).

Further, while Claim 17 is directed to replacing or filtering application libraries, it does not recite *which* corresponding requests should be replaced or filtered. Nor does claim 17 recite *how* system service requests should be replaced or filtered, let alone describe an improvement to replacing or filtering. It simply recites that system service requests should be replaced or filtered. Its use of these concepts is accordingly abstract. Indeed, the claim's use of filtering or replacing application libraries is at best a field-of-use application to the old idea of adapting or replacing resources. *Symantec Corp*., 838 F.3d at 1314  ("'fundamental … practice[s] long prevalent' are abstract ideas") (quoting *Alice*, 573 U.S. at 219).

The Federal Circuit has repeatedly held that claims reciting "result-based functional language" for performing such computer processes without "sufficiently describ[ing] how to

achieve these results" are abstract. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *see also Interval Licensing LLC v. AOL, Inc*., 896 F.3d 1335, 1346 (Fed. Cir. 2018) (claims that "recited only at the broadest, functional level, without explaining how that is accomplished" were abstract); *RecogniCorp, LLC*, 855 F.3d at 1326 (claims that focused on "abstract end-result," not "'specific means or method' for improving technology" were abstract) (citation omitted). Rather, "[t]he purely functional nature of [a] claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *Univ. of Fla.*, 916 F.3d at 1366, 1368 (converting formats is abstract as it does not explain "*how* [to] do the conversion" and is "described in purely *functional* terms.")

Eolas Technologies Incorporated v Amazon.com Inc., et. al. is also instructive. There, the Federal Circuit found equally long claims reciting "an automatically invoked interactive-content application 'configured to operate as part of a distribution application' that 'enable[s] a user' to interact with data objects within a World Wide Web Page" to be directed to the idea of "interacting with content on the World Wide Web." 2024 WL 371959, at *4, *6 (Fed. Cir. Feb. 1, 2024), *cert. denied,* 145 S. Ct. 149 (2024). Because "the claims merely describe a desired function or outcome without providing details of the claimed distributed processing[,]" the Federal Circuit determined they were abstract. *Id.* at *6. Claim 17 here likewise requires "filtering" and using files "in place of" other files without reciting details for that filtering and replacing. Moreover, *Eolas* rejected the patent holder's argument that "it developed new functionality that was not previously available[,]" noting that "an abstract idea that is new or groundbreaking is not any less abstract." *Id*. at *5.

In *Aftechmobile Inc. v. Salesforce.com, Inc*., the Federal Circuit affirmed the district court's grant of a motion to dismiss, finding that "while the claim recited a computer program to

accomplish various functions by running a 'computer program code' stored in a generic computer storage medium and run on a generic computer processor, it nowhere recited *how* the program code was written or *how* it worked to accomplish those functions." 853 F. App'x 669, 669-70 (Fed. Cir. 2021). Here too, claim 17 does not recite how the "filtering" code is written or how it modifies the values that would otherwise have been returned by the operating system. Nor does it recite which files should be used in place of the associated local system files, or how that replacement should be implemented. The '762 patent is thus similarly abstract.

### 2.    VirtaMove's Assertions in the Complaint Are of No Import

VirtaMove alleges that the '762 patent is not routine or conventional, citing a Gartner "Cloud Computing" report which groups vendors into different quadrants of a "Visualization Landscape." Compl. ¶ 13. VirtaMove alleges that because "AppZero" is in its own quadrant, it "has no direct technological competitors." *Id*. But VirtaMove provides no allegations as to how this April 2009 report, years after the '762 patent's 2000 filing, relates to the claimed technology or the § 101 analysis. And while VirtaMove points to the Patent Office's finding that "the prior art did not disclose or render obvious the claims of the '762 patent" (*id.* ¶ 14), the "Supreme Court has unequivocally stated that such inquiries are separate and distinct" from the § 101 analysis. *Miller Mendel, Inc. v. City of Anna, Texas*, 598 F.Supp.3d 486, 498 (E.D. Tex. 2022) (citing *Diamond v. Diehr,* 450 U.S. 175, 190 (1981)). "Thus, any argument regarding the alleged novelty or non-obviousness of [a patent] has little, if any, relevance in determining whether [a patent] is directed to patent-ineligible subject matter." *Id*. Indeed, "a claim for a *new* abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (emphasis in original). Even if the Examiner had considered the *Alice* framework three years before *Alice* issued, "a patent examiner's consideration of Section 101 issues does not 'in any way shield the patent's claims from Article III review for patent eligibility.'" *Beteiro, LLC v.*

*DraftKings Inc.,* 104 F.4th 1350, 1359 (Fed. Cir. 2024). Were it enough that the PTO viewed a patent valid, a district court could never find any patent unpatentable under § 101.

VirtaMove also argues that the '762 patent is not abstract because it purportedly "provides a technological solution to a fundamentally technological problem," pointing to the specification's assertion that "an object of this invention is to provide a system whereby one or more software applications can be run or executed on an incompatible computer platform which heretofore, the applications could not be run on." Compl. ¶ 15 (quoting 1:51-54). But as discussed *supra*, filtering or replacing incompatible resources is longstanding. While the '762 patent may limit the abstract idea to application libraries, that does not render the idea any less abstract. *BSG Tech LLC v. Buyseasons, Inc.,* 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("a claim is not patent eligible merely because it applies an abstract idea in a narrow way"); *Intell. Ventures I LLC v. Cap. One Bank (USA),* 792 F.3d 1363, 1366 (Fed. Cir. 2015) ("[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment").

VirtaMove also points to a portion of the specification stating that "by providing linkages to libraries and applications, and providing a secure capsule run time environment, software applications can be run on systems where they could not before." Compl. ¶ 15 (quoting 1:54-64). But claim 17 does not recite either "linkages" or "a secure capsule run time environment." "[T]he § 101 inquiry must focus on the language of the Asserted Claims themselves, and the specification cannot be used to import details from the specification if those details are not claimed." *ChargePoint,* 920 F.3d at 769 (Fed. Cir. 2019) (citation omitted).

## B.    <u>The Asserted Patent Claim Adds Nothing Inventive</u>

### 1.    <u>The Claim Limitations Are Well-Known, Conventional, and Routine</u>

At *Alice* step two, the Court must determine whether the claims add something significant "apart from" the abstract idea—an inventive concept that "transform[s] the abstract idea . . . into a

patent-eligible application." *Chamberlain Grp. v. Techtronic Indus. Co.,* 935 F.3d 1341, 1348–49 (Fed. Cir. 2019). VirtaMove's asserted claim does not.

Rather, claim 17 recites only generic computing components, structures, and functions—a processor, an operating system, a computer platform, a software application, an object executable, a kernel, and system files. Thus, the claimed components and functions are the same "basic functions of a computer" and "purely functional and generic" computer and network components that courts have found merely automate the abstract idea in a "particular technological environment"—which is insufficient to add an inventive concept. *Alice,* 573 U.S. at 225-26; *Free Stream Media Corp. v. Alphonso Inc.,* 996 F.3d 1355, 1366 (Fed. Cir. 2021) ("[p]rocessing an 'embedded object' . . . or rendering targeted data 'through a sandboxed application of a mobile device'" is non-inventive). "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech*, 899 F.3d at 1290–91. Even when viewed "as an ordered combination," the claims "ad[d] nothing . . . that is not already present when the steps are considered separately." *Alice,* 573 U.S. at 225 (citation omitted). Indeed, as noted above, the '762 patent acknowledges that all of the components of the claimed invention are in the prior art. *See* Fig. 3. VirtaMove provides no plausible allegations to the contrary in the Complaint.

        2.    <u>Claim 17 Does Not Recite *How* to Perform Any of the Recited Limitations</u>

"Without an explanation of the 'mechanism' for '**how** the result is accomplished,' th[e] purported feature[s] of the invention cannot supply an inventive concept." *Erie Indem.,* 850 F.3d at 1331-32 (emphasis added) (quoting *Internet Patents Corp.,* 790 F.3d 1343, 1348 (Fed. Cir. 2015)); *Elec. Power Grp.,* 830 F.3d at 1355 (At step two, "[i]nquiry . . . must turn to any requirements for *how* the desired result is achieved") (emphasis in original).

Nothing in the claim provides any concrete application of the recited steps or generic

computer functions; there are no specifics as to how the claimed apparatus actually replaces or filters the application libraries. For instance, claim 17 of the '762 patent does not recite:

- *how* to "provid[e] a computer readable set of first files";

- *how* to "execute" that "computer readable set of first files";

- *how* to determine which "second group of files" are "required to execute the first software application";

- *how* to "us[e] said second group of files in place of the associated local system files normally used to perform a same task";

- *how* to "manag[e] a dynamic state and file location of the first software application";

- *how* to "filter[] one or more system service requests made by the first software application"

- *which* "one or more system service requests made by the first software application" should be "filter[ed]";

- *how* to "provid[e] values from the at least one application filter library which is provided in addition to the local operating system libraries";

- *how* to "modify values that otherwise would have been returned by the local operating system in the absence of said filtering one or more system service requests from the first software application";

- *which* " predetermined values" should be "provided instead of values related to an identity of the incompatible computer platform"

Rather, for each element, the claim merely recites that these functional steps are to be done.

Thus "[t]he claims at issue do not require any nonconventional computer, network, or display components, or even a 'non-conventional and non-generic arrangement of known, conventional pieces,' but merely call for performance of the claimed [] functions 'on a set of generic computer components.'" *Elec. Power Grp.,* 830 F.3d at 1355; *Hawk Tech.,* 60 F.4th at 1358 (Fed. Cir. 2023) (finding that claims which use "generic functional language" and merely require "conventional computer and network components operating according to their ordinary functions" cannot impart an inventive step); *LendingTree, LLC v. Zillow, Inc.,* 656 F. App'x 991,

996 (Fed. Cir. 2016) ("It is well settled, though, that automating conventional activities using generic technology does not amount to an inventive concept."); *Chamberlain Grp.,* 935 F.3d at 1348 ("conventional components, all recited in a generic way, are no better equipped to save the claim from abstractness than were, for example, the conventional computer used in *Alice*"); *TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*, 657 F.App'x 991, 993 (Fed. Cir. 2016) (rejecting claims that "recite the ***what*** of the invention, but none of the *how* that is necessary to turn the abstract idea into a patent-eligible application") (italics in original).

## II.    VIRTAMOVE'S DIRECT INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED

"[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.,* 4 F.4th 1342, 1353 (Fed. Cir. 2021); *Heidary v. Amazon.com, Inc.,* No. 2024-1580, 2024 WL 4489918, at *4 (Fed. Cir. Oct. 15, 2024) (dismissing the complaint when the complaint and screenshot do not indicate that components of the claim are present in the accused products); *ALD Soc. LLC v. Google LLC,* No. WA-22-CV-972-FB, 2023 WL 3184631, at *4 (W.D. Tex. Mar. 17, 2023) (dismissing complaint for failing to allege how accused products meet claim limitations).

As detailed above, part of the purported invention of the '762 patent lies in the supposed addition of "filtered system services" to prior art existing computer systems, which modify the data returned by incompatible application libraries, *e.g.* so the Mac version of Microsoft Word can run on Windows. 9:25-27, 10:9-11, 10:27-28; *see also* Section II *supra*. This requirement is recited in claim 17(c), which among other things requires "filtering one or more system service requests made by the first software application and providing values from the at least one application filter library which is provided in addition to the local operating system libraries to modify values that

otherwise would have been returned by the local operating system."

VirtaMove's chart parrots the claim language of 17(c) and concludes that "[t]he method practiced by Google and/or its customer through the Accused Instrumentalities" implements the claim language. But VirtaMove includes no plausible factual allegations to back up this conclusion that the filtering step of 17(c) is met. Nor do any of the excerpts and images from various web pages that VirtaMove further includes suggest or relate to filtering application libraries. Instead, they relate to high-level functionality used when running containers that "contain" applications. For example, VirtaMove's chart includes excerpts regarding "containerd" functionality (Compl. Ex. 2 at 30-33), which, as the excerpts state, is software used to run containers and can enforce resource restrictions. *Id*. at 30, 32. But nothing VirtaMove cites regarding "containerd" refers to filtering at all. Other excerpts refer to how to set environment variables in Docker (*id*. at 34), e.g., a user could set their name to "John Doe" and their cat to "fluffy". https://docs.docker.com/reference/dockerfile/#env (Ex. L) (*cited at* Compl. Ex. 2 at 34). This allows programs to use customized data, e.g. by including the user's and their cat's names in the output. *Id*. But again, these excerpts do not mention filtering. The remaining allegations describe how to specify the resources used by a container (*id*. at 34-36), such as limiting the memory it can use.[8] Here too, there is no reference or suggestion of filtering application libraries. The Complaint accordingly fails to plausibly allege direct infringement by Google as a matter of law.

### III. VIRTAMOVE'S INDIRECT INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED

#### A. VirtaMove Does Not Plead The Elements of Induced Infringement

---

[8] Of note, VirtaMove did not assert that Google infringed the '762 patent in the *VirtaMove I* lawsuit involving much of the same accused technology. On July 23, 2023, Judge Gilstrap ruled one of the two *VirtaMove I* patents invalid. *VirtaMove v. HPE,* Case 2:24-cv-00093-JRG, Dkt. 222 at 18-19 (E.D. Tex. Jul. 23, 2025) (Ex. K). VirtaMove filed the instant case two weeks later.

VirtaMove's allegations of induced infringement amount to a conclusory statement that Google encourages and instructs end users to infringe through unidentified user manuals and online instruction materials:

> 18.    Defendant also knowingly and intentionally induces infringement of claims of the '762 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '762 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier. Despite this knowledge of the '762 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '762 patent. Defendant does so, knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '762 patent, thereby specifically intending for and inducing its customers to infringe the '762 patent through the customers' normal and customary use of the Accused Products.

Compl. ¶18. Such conclusory allegations fail to present facts that demonstrate: (1) Google knew that the alleged acts infringed, and (2) Google knew that the promotion of its products would induce or encourage others to infringe the asserted patents. *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement."); *Affinity Labs of Texas, LLC*, 2014 WL 2892285 at *7 (similar).

VirtaMove does allege that Google "continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '762 patent." Compl. ¶18. But to the extent VirtaMove is referring to use of the various "Accused Products" by end users as the direct infringement of third parties, the Complaint is infirm for the same reasons as to Google because its infringement charts do not show that any of the "Accused Products" practice the purportedly inventive "filtering." VirtaMove also alleges that Google "continues to make, use,

offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '762 patent."
Compl. ¶18. But this is an (insufficient) allegation of direct infringement by Google, not end users.
Failure to plausibly plead third party infringement is alone fatal for induced infringement. *Inhale,
Inc v. Gravitron, LLC*, No. 1-18-CV-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018).

Further, allegations of the required element of specific intent require factual "evidence of
culpable conduct, directed to encouraging another's infringement, not merely that the inducer had
knowledge of the direct infringer's activities." *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-
CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. Jul. 26, 2019) (citation omitted). While
VirtaMove's infringement charts do make reference to Google materials, VirtaMove's inducement
allegations fail to provide any specific allegations such as mapping instructions to end users to the
performance of the claimed steps of the patent— *i.e.*, "evidence of culpable conduct, directed to
encouraging another's infringement." *Id.*

### B.     **VirtaMove Does Not Plead The Elements of Contributory Infringement**

Here too, for each patent, VirtaMove's allegations amount to little more than a conclusory
statement that repeats the legal elements of contributory infringement:

> 19.     Defendant has also infringed, and continue to infringe, claims of the '762
> patent by offering to commercially distribute, commercially distributing, making,
> and/or importing the Accused Products, which are used in practicing the process,
> or using the systems, of the patent, and constitute a material part of the invention.
> Defendant knows the components in the Accused Products to be especially made
> or especially adapted for use in infringement of the patent, not a staple article, and
> not a commodity of commerce suitable for substantial noninfringing use.
> Accordingly, Defendant has been, and currently are, contributorily infringing the
> '762 patent, in violation of 35 U.S.C. § 271(c).

Compl., ¶ 19. But as the Federal Circuit held in *Artrip v. Ball Corporation*, such conclusory
allegations are not enough. 735 F. App'x 708, 713 (Fed. Cir. 2018) (affirming dismissal of a
contributory infringement claim where the "complaint did not plausibly assert facts to suggest that
[Defendant] was aware of the patents or facts to suggest that the [accused product] it supplied had

-18-

no substantial noninfringing use[,]"only that the accused product was "not a 'staple article' and [was] not suitable for substantial noninfringing use").

Further, VirtaMove does not "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses[.]" *Id.* (citation omitted). The Complaint does not identify what part of each Accused Product is a "component" used for infringement, much less any facts showing an inference that the unidentified, accused "component" has no substantial non-infringing uses or is a material part of the invention.

### C.    VirtaMove Does Not Plead Pre-Suit Knowledge

At a minimum, VirtaMove's pre-suit allegations of indirect infringement should be dismissed. Both induced and contributory infringement require "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011) (indirect infringement requires "knowledge of the existence of the patent that is [allegedly] infringed" and "knowledge that the induced acts constitute patent infringement.").

VirtaMove makes a conclusory allegation that Google "has had knowledge of the '762 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier." Compl. ¶ 18. Courts in this district have repeatedly rejected such allegations of knowledge as insufficient to plead pre-suit indirect infringement. *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432-ADA, Dkt. 28, 35 (W.D. Tex. Feb. 20, 2020); *Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-CV-00029-ADA, 2020 WL 6578418, at *5 (W.D. Tex. July 22, 2020). The Complaint also includes a paragraph regarding alleged business meetings with Google prior to the complaint, but VirtaMove does not allege it put Google on notice of any patents in these meetings. Compl. ¶ 10. Instead, there is just a conclusion that Google "would have learned that AppZero was patented" through some unidentified "due diligence" or was "willfully blind,"

despite that, even under VirtaMove's own allegations, it never told Google that VirtaMove had any patents at all. *Id.* But "[a] plaintiff who relies on willful blindness to plead knowledge must identify in its complaint affirmative actions taken by the defendant to avoid gaining actual knowledge of the patent to escape dismissal." *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*, No. 6:20-CV-00318-ADA, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021) (also finding allegation that plaintiff's representative informed defendant that its products were patented, which is not even alleged here, insufficient to establish pre-suit knowledge) (citations omitted).

Even if these conclusory allegations somehow amounted to a plausible allegation of knowledge of *the '762 Patent*, VirtaMove provides no plausible allegation of knowledge of *infringement*. While VirtaMove concludes its "technology from its demos and disclosures appears to have made their way into the Accused Products of Google described below" (Compl. ¶ 10), VirtaMove provides no allegations regarding a relationship between anything shown to Google at those meetings and the Accused Products, much less the '762 Patent. Notably, the Complaint indirectly suggests that AppZero was patented, but does not allege that AppZero practices *the '762 patent* (*id.*), nor does it allege that AppZero was marked under 35 U.S.C. § 287. *Id.* ¶ 22.

## <u>CONCLUSION</u>

Google respectfully requests that the Court dismiss the Complaint on the grounds that the '762 claims do not contain patent eligible subject matter. Google also respectfully requests that the Court dismiss VirtaMove's allegations of direct and indirect infringement, or at a minimum, dismiss VirtaMove's demand for pre-suit damages and indirect infringement.

DATED:  October 20, 2025                    Respectfully submitted,

                                            JACKSON WALKER LLP

                                   BY:     /s/ Nathaniel St. Clair, II
                                           Nathaniel St. Clair, II
                                           Texas State Bar No. 24071564
                                           2323 Ross Avenue, Suite 600
                                           Dallas, TX 75201
                                           Tel:  (214) 953-5948
                                           Fax: (214) 953-5822
                                           nstclair@jw.com

                                           *Counsel for Defendant Google LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of October, 2025, a true and correct copy of the foregoing

document was filed electronically with the Clerk of Court using the CM/ECF system which will

send notification of such filing to counsel for all parties of record.


                                           /s/ Nathaniel St. Clair, II
                                           Nathaniel St. Clair, II