# EXHIBIT D

PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| VIRTAMOVE CORP.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Civil Action No. 7:24-cv-00033 |

## DEFENDANT GOOGLE LLC'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)

████████████████████████████████████████

**PUBLIC VERSION**

## <u>TABLE OF CONTENTS</u>

BACKGROUND ........................................................................................................2

I.      VirtaMove's Infringement Allegations ..........................................................2

II.     Google's Likely Witnesses Are Concentrated In NDCA ...............................3

III.    Many Likely Third Party Witnesses Are Located In NDCA ..........................6

IV.     VirtaMove Has No Ties To WDTX ................................................................8

LEGAL STANDARD ..............................................................................................9

ARGUMENT ..........................................................................................................10

I.      VirtaMove Could Have Brought This Case In NDCA ..................................10

II.     All Private Interest Factors Favor Transfer To NDCA ................................10

        A.      Cost Of Attendance For Willing Witnesses Heavily Favors Transfer To
                NDCA ................................................................................................11

        B.      Availability of Compulsory Process Favors Transfer to NDCA ...........15

        C.      Relative Ease Of Access To Sources Of Proof Favors Transfer To NDCA..........16

        D.      There Are No Practical Problems With Transferring This Case To NDCA..........17

III.    The Public Interest Factors Also Weigh In Favor Of Transfer......................18

        A.      NDCA Has A Strong Local Interest In This Dispute ............................18

        B.      The administrative difficulties flowing from court congestion ............19

        C.      The Remaining Public Interest Factors Are Neutral..............................20

CONCLUSION........................................................................................................20

PUBLIC VERSION

## TABLE OF AUTHORITIES

**Page**

### Cases

*10Tales, Inc. v. TikTok Inc.*,
No. 6:20-CV-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ............... 10, 14, 20

*Adaptix, Inc. v. HTC Corp.*,
937 F. Supp. 2d 867 (E.D. Tex. March 28, 2013) ................................................. 15

*Am. Leather Operations, LLC v. Ultra-Mek, Inc.*,
No. 3:13-CV-4496-N, 2014 WL 12584334 (N.D. Tex. Apr. 8, 2014) .................................... 16

*Correct Transmission LLC v. ADTRAN, Inc.*,
No. 6:20-CV-00669-ADA, 2021 WL 1967985 (W.D. Tex. May 17, 2021) .......................... 18

*eCardless Bancorp, Ltd. v. PayPal Holdings, Inc.*,
7:22-cv-00245-ADA-DTG (W.D. Tex. Feb. 15, 2024) .................................................... 15, 20

*Ecofactor, Inc. v. Resideo Techs., Inc.*,
No. W-22-CV-00069-ADA, 2022 WL 13973997 (W.D. Tex. Oct. 21, 2022) ........................ 19

*Greenthread, LLC v. Intel Corp.*,
No. 6:22-CV-105-ADA, 2022 WL 17968760 (W.D. Tex. Dec. 27, 2022) ...................... 18, 20

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010) .................................................................................. 11

*In re Adobe Inc.*,
823 F. App'x 929 (Fed. Cir. 2020) ............................................................................ 14

*In re Apple  Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ................................................................................ 17

*In re Apple Inc.*,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) .................................... 16

*In re Apple*,
581 F. App'x 886 (Fed. Cir. 2014) ............................................................................ 15

*In re Apple*,
979 F.3d 1332 (Fed. Cir. 2020) ................................................................................ 14

*In re Clarke*,
94 F.4th 502 ............................................................................................................ 20

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) ................................................................................ 10

*In re DISH Network LLC*,
No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021).................................... 15

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ........................................................................ 2, 11

███████████████████████

**PUBLIC VERSION**

*In re Google LLC*,
Case No. 2021-170, 2021 WL4427899 (Fed. Cir. Sept. 27, 2021) ......................................... 13

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) .................................................. 17

In re Google,
No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) .................................................... 18

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2008).............................................................................................. 19

*In re HP, Inc.*,
No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ................................................ 15

*In re Juniper  Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ............................................................................................... 17

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ................................................................................................. 9

*In re Jupiter*,
14 F.4th 1313 (Fed. Cir. 2021) ............................................................................................... 15

*In re Netflix, Inc.*,
No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) .................................................... 15

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009)........................................................................................ 2, 9, 10

*In re Radmax*,
720 F.3d 285 (5th Cir. 2013) ................................................................................................... 17

*In re Samsung Elecs. Co., Ltd.*,
2 F.4th 1371 (Fed. Cir. 2021) .................................................................................................. 19

*In re Toyota Motor Corp.*,
747 F.3d 1338 (Fed. Cir. 2014)................................................................................................. 9

*In re Tracfone Wireless, Inc.*,
852 F. App'x 537 (Fed. Cir. 2021) .................................................................................... 14, 19

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008)......................................................................................... 20, 21

*In re Volkswagen AG*,
371 F.3d 201, 204-05 (5th Cir. 2004) ("*Volkswagen I*") .................................................. 11, 13

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*") ........................................................... passim

*Mobile Data Techs. LLC v. Meta Platforms, Inc.*,
No. 722CV00244ADADTG, 2023 WL 9051280 (W.D. Tex. Dec. 18, 2023).................. 15, 17

*Monsanto Co. v. Ledbetter*,
No. 3:07-CV-1881-N, 2008 WL 11347430 (N.D. Tex. Mar. 10, 2008)................................. 10

iii

**PUBLIC VERSION**

*Motion Offense, LLC v. Google LLC*,
  No. 6:21-CV-00514-ADA, 2022 WL 5027730 (W.D. Tex. Oct. 4, 2022) ............................. 16

*Polaris Innovations, Ltd. v. Dell, Inc.*,
  No. SA-16-CV-451-XR, 2016 U.S. Dist. LEXIS 167263 (W.D. Tex. Dec. 5, 2016) .............. 11

*Sonos, Inc. v. D&M Holdings Inc.*,
  No. CV 14-1330-WCB, 2017 WL 4969330 (D. Del. Nov. 1, 2017) ......................................... 8

*USTA Tech., LLC v. Google LLC*,
  No. W-22-CA-01214-XR, 2023 WL 4833481 (W.D. Tex. July 26, 2023) ............................. 20

*VirtaMove v. Amazon et. al.*,
  24-CV-00030-ADA-DTG .......................................................................................................... 6

## Statutes

28 U.S.C. § 1400(b) ........................................................................................................................ 10

## Other Authorities

Docker, https://docs.docker.com/get-started/overview/ ................................................................. 3

https:// www.forbes.com/sites/geoffwhitmore/2024/02/22/united-airlines-to-resume-flights-to-
  tel-aviv/ ..................................................................................................................................... 14

## Rules

Fed. R. Civ. P. 45(c)(1)(A)-(B) ................................................................................................... 16

PUBLIC VERSION

## NOTES ON CITATIONS

- The patents-in-suit, United States Patent Nos. 7,519,814 ("the '814 Patent") and 7,784,058 ("the '058 Patent") were attached as Exhibits 1 and 3 of the Complaint. References to the patents-in-suit are indicated by column and line number, or by claim number. They are referred to as the "Asserted Patents."

- References to VirtaMove's Amended Complaint (Dkt. 27) are designated by "Am. Compl." followed by a paragraph or exhibit number.

- References to the Declaration of Deepa Acharya in Support of Google's Motion to Transfer Venue are designated by "QE Decl." followed by a paragraph or exhibit number.

- References to the Declaration of Prathima Devarasetty in Support of Google's Motion to Transfer Venue are designated by "GKE Decl." followed by a paragraph or exhibit number.

- References to the Declaration of Wenlei He in Support of Google's Motion to Transfer Venue are designated by "Cloud Run Decl." followed by a paragraph or exhibit number.

- References to the Declaration of Leonid Vasetsky in Support of Google's Motion to Transfer Venue are designated by "Migrate to Containers Decl." followed by a paragraph or exhibit number.

- References to July 1, 2024 Plaintiff VirtaMove's Corrected Preliminary Disclosure of Asserted Claims and Infringement Contentions (attached to the QE Decl. as Exhibit 1) are designated by "PICs" followed by a page number or referenced chart. VirtaMove's infringement chart for the '814 Patent is referred to as the "'814 Chart" and VirtaMove's infringement chart for the '058 Patent is referred to as the "'058 Chart."

- All emphases are added unless otherwise noted.

**PUBLIC VERSION**

Google LLC ("Google") respectfully requests transfer of this action to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a) because NDCA is clearly the more convenient forum for this lawsuit.

This case could and should be litigated elsewhere. Plaintiff VirtaMove has no connection to the Western District of Texas ("WDTX"). As a Canadian corporation, VirtaMove has no office or employees in Texas. Google is unaware of VirtaMove or any relevant third parties having ties to WDTX.

In contrast, a substantial number of relevant witnesses are located in NDCA. Google's headquarters are in Mountain View, California. VirtaMove identifies Google Cloud Run and Google Kubernetes Engine (GKE) as Accused Products. Google engineers with knowledge about the development and operation of what appear to be the accused aspects of these products, are primarily in the Bay Area or the Seattle, Washington area, from which travel to NDCA is considerably more convenient. And while VirtaMove also identifies (but does not separately chart) Migrate to Containers as an Accused Product, the Google engineers with knowledge about this product live and work in Israel, so there is inconvenience as to them in NDCA or WDTX; accordingly, they have little, if any, relevance to the transfer analysis. Google does have an office in Austin, Texas, but this is hundreds of miles from the Midland-Odessa Division and has little to no relevance to this litigation.

Further, a number of potential third-party witnesses are located in NDCA. This includes persons with knowledge of relevant prior art systems, and technology that appears to be implicated by VirtaMove's infringement allegations, such as Docker. For all of these witnesses, NDCA is more convenient than WDTX. The same is true for other potential witnesses, such as the inventors

of the Asserted Patents, that reside neither near NDCA nor WDTX.  If anything, traveling to NDCA would be easier given the greater availability of flights to the San Francisco Bay Area.

Where, as here, "the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff," the case should be transferred.  *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009)).  Accordingly, Google respectfully requests that the Court transfer this case to NDCA.

## BACKGROUND

### I.    VirtaMove's Infringement Allegations

VirtaMove accuses Google of infringing two patents, the '058 Patent, entitled "Computing System Having User Mode Critical System Elements as Shared Libraries," and the '814 Patent, entitled "System for Containerization of Application Sets." Am. Compl., ¶ 1.  VirtaMove's PICs accuse independent claim 1 of each patent, and dependent claims 2–5, 10, and 18 of the '058 patent and dependent claims 2, 4, 6, 9, 10, 13, and 14 of the '814 patent.  QE Decl. Ex. 1 (PICs), at 1. Claim 1 of the '058 patent recites a computing system for executing a plurality of software applications. Am. Compl, Ex. 1. And Claim 1 of the '814 patent concerns the execution of applications in containers. *Id.*, Ex. 2.

As noted above, VirtaMove's preliminary infringement contentions identify Google Kubernetes Engine (GKE) as an Accused Product.[1]  QE Decl. Ex. 1 (PICs), at 2.  Kubernetes is an open source system to deploy, scale, and manage containerized applications. GKE Decl., ¶ 3. Kubernetes was released in 2014. *Id.*, ¶ 7.  GKE is a cloud based Kubernetes service offered by

---

[1] VirtaMove's Amended Complaint (and original Complaint) only identified Google's Migrate to Containers as an Accused Product. VirtaMove then added GKE and Cloud Run as Accused Products in its PICs served June 26. Google's deadline to file a venue motion without leave was originally set for June 25 in the Court's June 17 Scheduling Order.  Dkt. 34, 1. The Court then extended that deadline to July 10 in its July 2 text order.

Google for running containerized applications. *Id.*, ¶ 3.  VirtaMove also accuses Google Cloud Run. QE Decl., Ex. 1 (PICs), at 2.  Cloud Run is a managed compute platform that lets end users run containers on Google Cloud.  Cloud Run Decl., ¶ 3.

VirtaMove does not include separate infringement charts for GKE and Cloud Run, instead addressing them together.  Although the contentions are unclear in several respects, for GKE and Cloud Run, VirtaMove appears to be accusing the running of applications in containers in both products generally.  QE Decl., Ex. 1 (PICs), '814 Chart and '058 Chart, *passim*. In this context, VirtaMove's infringement allegations point to container software developed by Docker, Inc, mentioning Docker in several places.  *E.g.*, *id.*, '814 Chart (mentioning Docker for every limitation of claim 1). Docker, headquartered in NDCA, is an open-source platform for developing and running applications in containers. https://docs.docker.com/get-started/overview/.

VirtaMove also purports to accuse Migrate to Containers in its complaints and PICs. Compl. ¶ 3; Am. Compl. ¶ 3; QE Decl., Ex. 1 (PICs), at 2.   As its name suggests, Migrate to Containers is a tool that puts applications into containers. MTC Decl., ¶ 3. As was the case in its Amended Complaint (Dkt. 36, 8), VirtaMove largely ignores Migrate to Containers in its PICs infringement charts.

## II.     Google's Likely Witnesses Are Concentrated In NDCA

Google is headquartered in Mountain View, CA, with several offices throughout the San Francisco Bay Area in NDCA. QE Decl., Exs. 2, 3.  For both the accused Cloud Run and GKE products, the relevant Google engineers and product managers likely to be witnesses in this case are concentrated in NDCA.

Specifically, the technical witnesses who work on Cloud Run's functionality for running applications in containers are concentrated in Northern California. ███████████████

█████████████████████████████████ Cloud Run Decl., ¶ 4. Blithe Rocher, the team's engineering manager, works from Google's San Francisco office. *Id.* As of ███████████ of the █████ members on her team were located in the Bay Area, while ███ team member worked from Google's Seattle, Washington office. *Id.* This includes Jeremie Lenfant-Engelmann, a Software Engineer and Tech Lead who works from Google's San Francisco office. *Id.* ████████████████████████████

██████████████████████████████████████

*Id.*, ¶ 5. Hatem ElAraby, the team's engineering manager, works from Google's San Francisco office. *Id.* ██████████████ of the █████ members worked from Google's San Francisco Office, while █████ worked from Canada and ████ worked from Google's New York City, New York. *Id.*. This includes Ben Marks, a Software Engineer and Tech Lead on the ████████████ team who works from Google's San Francisco office. *Id.* Wenlei He, a tech lead for ████████ ██████████████████████████ who works with both the ██████████████ and █████████ ███████████████, works from Google's Sunnyvale office. *Id.*, ¶ 2.

Steren Giannini, the Group Product Manager for Cloud Run, also works from Google's Sunnyvale office. *Id.*, ¶ 6. ███████████████, Mr. Giannini had █████████████████. *Id.* ████ worked from Google's Sunnyvale, California office, ████ worked from Google's San Francisco office, and ████ worked from Google's Seattle or Kirkland, Washington offices. *Id.* Beyond that, ████ worked from each of Google's Atlanta, New York, and Bangalore, India offices, and ████ worked remotely in Ohio. *Id.*

Further, the ████████████ team ███████████████████████████ █████████████████████. GKE Decl., ¶ 4. Prathima Devarasetty, the Tech Lead Manager for the ████████████ team, works from Google's Sunnyvale office. *Id.*, ¶¶ 2, 4.

███████████████████████████ of the other ███████████████ team members did as well, while ████ worked remotely from the San Francisco Bay Area, ████ worked from the Seattle, Washington area, and ████ worked from Google's New York, New York office. *Id.*, ¶ 4. This includes Zhen Wang, a Software Engineer in Google's Sunnyvale, California office. *Id.* Jago Macleod, Director of Engineering in GKE, ███████████████████████. *Id.*, ¶ 8. Mr. Macleod has worked on the development and operation of GKE since March 2017. *Id.* He works from Google's Sunnyvale, California office. *Id.* Mr. Macleod has ███████████████ ███████████████████████████ in 2019-2020 and from January 2024 to present. *Id.* Further, the ███████████ team ████████████████████████████████████ ██████████████████████████████████ *Id.*, ¶ 4. ██████████████, the ██████████████████, which consists of several engineers who were formerly on the ████████ ██████████, all worked in the Seattle, Washington area. *Id.* This includes Ning Liao, the Software Engineer Manager of the ████████████████, who works from Google's Kirkland, Washington office and ████████████████████████████████. *Id.*

Additionally, Tim Hockin, a Software Engineer working from Google's Sunnyvale, California office is also in NDCA. *Id.*, ¶ 9. Mr. Hockin ██████████████████████████ ████████████████████████████████████████ *Id.* Dawn Chen, a Software Engineer in GKE, working from Google's Sunnyvale, California office ██████████████████████████████████ ████████████████████████████████████ *Id.* ¶ 7. The Google teams involved in this development and release of open source Kubernetes were primarily in the San Francisco Bay Area and the Seattle, Washington area. *Id.*, ¶ 9.

Accordingly, the engineers with knowledge of how Google Cloud Run and GKE execute containers primarily work in NDCA and the Seattle, Washington area, with most working from

the Bay Area.[2]   Moreover, as a matter of practice, technical documents regarding Google's

products and services are created and maintained by the employees working on those products and

services.   Cloud Run Decl., ¶ 2, GKE Decl., ¶ 2.   Thus, the majority of relevant documents

regarding the running of applications in containers in Cloud Run and GKE are created and

maintained in the Bay Area or the Seattle, Washington area.

The development and design of Google Migrate to Containers occurred, and continues to

occur, in Tel Aviv, Israel.  MTC Decl., ¶ 4.  This includes Leonid Vasetsky, the technical lead for

████████████████████████████████████, and Eyal Yaron, the senior project manager for

Migrate to Containers.  *Id.* ¶¶ 2, 5. But again, while identified as an Accused Product, to the extent

they can be understood at all, VirtaMove's infringement contentions do not appear directed to

Migrate to Containers.

## III.     Many Likely Third Party Witnesses Are Located In NDCA

A number of third-party witnesses as well as other relevant evidence will be involved in

this case.  As noted above, VirtaMove's allegations against Google appear to implicate Docker,

based in the NDCA.  Docker was founded by Kamel Founadi, Solomon Hykes, and Sebastien

Pahl.[3]  QE Decl., Ex. 4. Mr. Founadi and Mr. Hykes remain in NDCA. QE Decl., Exs. 5, 6.

---

[2] Although four engineers who have worked in the GKE product area are located in Austin, Texas, none worked on the ███████████████ or the operation and development of what appears to be the specifically accused functionality in this case. GKE Decl. ¶ 10-13.  Google does not anticipate they would be trial witnesses for either party.  Google also has employees in Austin, Texas with ████████████████████████████████████ positions (as it does in the Bay Area and Seattle area, as well), but again Google does not anticipate they will be trial witnesses called by either party.

[3]   VirtaMove specifically identifies Docker's "writable container layer" (e.g., QE Decl., Ex. 1 (PICs) at 16) and "base image" (e.g., QE Decl., Ex. 1 (PICs) at 15) functionalities in its PICs. According to the Declaration of Phil Estes filed in support of Amazon's motion to transfer in *VirtaMove v. Amazon et. al.*, 24-CV-00030-ADA-DTG, Tonis Tiigi and Derek McGowan are the Docker engineers responsible for these functionalities. QE Decl., Ex. 10, ¶ 3-4.  Mr. Tiigi is in NDCA and Mr. McGowan is nearby in Sacramento, California.  QE Decl., Exs. 11, 12.

Sebastien Pahl is in Seattle, Washington. QE Decl., Ex. 7. Docker's *containerd* solution, which VirtaMove has referenced in its infringement contentions (e.g. QE Decl., Ex. 1 (PICs) at 2), was donated to the Cloud Native Computing Foundation ("CNCF") in 2017. QE Decl., Ex. 8. CNCF is based in NDCA. QE Decl., Ex. 9.

Although Google's investigation is at its early stages, there are also likely several third-party witnesses and/or entities with knowledge of prior art systems in NDCA. For example, the blog posts "A Brief History of Containers: From the 1970s Till Now" and "The History of Containers" (2015) discuss FreeDSB Jails. QE Decl., Exs. 15, 16. The latter notes that in 2000, "jails, an early implementation of container technology, was added to FreeBSD." QE Decl., Ex. 16 at 2. FreeBSD "is an operating system for a variety of platforms which focuses on features, speed, and stability. It is derived from BSD, the version of UNIX® developed at the University of California, Berkeley." QE Decl., Ex. 17 at 1.

Moreover, Sun Microsystems, then based in NDCA, introduced "software containers" in 2002 as a feature of version 9 of its Solaris operating system. QE Decl., Ex. 18 at 2-3. In the following version, Sun introduced a revised version of its software containers as "zones," and filed a number of provisional patent applications concerning zones in 2003. QE Decl., Ex. 19. In 2004, Sun filed a non-provisional application concerning the same, which led to a patent issuance in 2008. QE Decl., Ex. 20. Three of the named inventors on this patent (Andrew Tucker, John Beck, and Daniel Price) are in NDCA; Mr. Tucker is a Google employee. QE Decl., Ex. 21-23. The testimony from these three inventors (and related documents) will be relevant to establishing the conception and reduction to practice of their prior art invention, which is a relevant consideration in establishing the technology as prior art under § 102(g). *E.g.*, *Sonos, Inc. v. D&M Holdings Inc.*,

No. CV 14-1330-WCB, 2017 WL 4969330, at *6 (D. Del. Nov. 1, 2017) (Bryson, J.) (explaining the showing required for § 102(g)).

As a further example, a paper written by David R. Cheriton in 1986 discusses a system called "VMTP," QE Decl., Ex. 27, which implements a process for moving software from an operating system's kernel to the user mode code running on top of the operation system, making it relevant prior art to the '058 patent. *E.g.*, '058 patent, 10:54-65. David R. Cheriton is in NDCA. QE Decl., Ex. 28. His testimony will be relevant to explaining how the VMTP system was put into public use by Stanford University.

Finally, a paper written by Brian Schmidt in 2000 discloses a system for using "compute capsules," that can isolate files and applications "within a shared environment," which is relevant to the '814 Patent. QE Decl., Ex. 31 at 32. Brian Schmidt is also a named inventor on at least two patents in this space, along with James Hanko. QE Decl., Exs. 32, 33. Brian Schmidt and James Hanko are in NDCA. QE Decl., Ex. 34, 35. Another paper written by Stanford University researchers further discusses Brian Schmidt's concept of compute capsules. QE Decl., Ex. 36 at 2, 14. Three of the authors of this paper (Constantine P. Sapuntzakis, Monica S. Lam, and Mendel Rosenblum) are in NDCA. QE Decl., Exs. 37-39.

## IV.    VirtaMove Has No Ties To WDTX

VirtaMove does not have any apparent ties to WDTX. VirtaMove is a Canadian company. Compl., ¶ 1. The Complaint alleges its place of business is in Ottawa, Ontario. *Id.* The Complaint alleges no place of business operation or any personnel in Texas. Indeed, VirtaMove does not allege any current presence in the United States at all in its Complaint.[4]

---

[4]    VirtaMove's website does indicate an office in Andover, Massachusetts at 300 Brickstone Square, Suite 201. https://virtamove.com/contact/. Not listed in the complaints, it is unclear whether that location still exists. E.g. https://www.linkedin.com/company/virtamove/about/

Although they no longer appear to work at or be affiliated with VirtaMove, none of the three inventors of the Asserted Patents resides in WDTX or Texas. Paul O'Leary and Dean Huffman reside in Ottawa, Canada (where VirtaMove is based). QE Decl., Exs. 40, 41. Donn Rochete resides in Dayton, Ohio, over 1100 miles from Midland. QE Decl., Exs. 42, 43.

**LEGAL STANDARD**

To evaluate transfer under 28 U.S.C. § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). If so, courts weigh eight private and public factors:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive[;] . . . [5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interests decided at home; [7] the familiarity of the forum with the law that will govern the case; and [8] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 315 (internal citations and quotation marks omitted).

The proposed transferee forum is "clearly more convenient" where, as here, most potential witnesses and relevant evidence are concentrated in the transferee district. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318-19 (Fed. Cir. 2021); *see also In re Toyota Motor Corp.*, 747 F.3d 1338, 1340-41 (Fed. Cir. 2014); *Nintendo*, 589 F.3d at 1198. The determination is not whether the "transferee forum is *far* more convenient." *Toyota*, 747 F.3d at 1341 (emphasis in original). Nor does plaintiff's choice of venue carry any weight, especially where, as here, the plaintiff "selects a district court with no obvious connection to the case or the plaintiff is a nonresident of the chosen

---

(listing only Ottawa location).

forum . . . ." *Monsanto Co. v. Ledbetter*, No. 3:07-CV-1881-N, 2008 WL 11347430, at *1 (N.D. Tex. Mar. 10, 2008); *see also Nintendo*, 589 F.3d at 1200. "Courts may 'consider undisputed facts outside the pleadings, but must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party.'" *10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-00810-ADA, 2021 WL 2043978, at *2 (W.D. Tex. May 21, 2021) (citations omitted).

## ARGUMENT

Because VirtaMove could have brought this case in NDCA and the private and public interest factors all demonstrate that NDCA is clearly a more convenient forum than WDTX, Google respectfully requests this Court transfer this case to NDCA under 28 U.S.C. § 1404(a).

## I. VirtaMove Could Have Brought This Case In NDCA

As VirtaMove admits, Google is headquartered in Mountain View, CA, in NDCA. Compl. ¶ 6. Thus, VirtaMove could have filed this lawsuit in NDCA, where Google has a "regular and established place of business." 28 U.S.C. § 1400(b); *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). The transfer analysis therefore turns on weighing the private and public interest factors.

## II. All Private Interest Factors Favor Transfer To NDCA

The private factors strongly favor transfer to NDCA because it is more convenient for the vast majority of third party and Google witnesses. NDCA has subpoena power over a number of potentially relevant third-party witnesses and persons with knowledge of Docker and prior art systems that are located in California. Significant relevant evidence is created and maintained in NDCA, including technical documents, as well as Google's highly secure source code. In contrast, this case has no connection to WDTX. And as to VirtaMove, which is a company based in Canada that has no ties to WDTX, transferring this case to NDCA will have no impact on the convenience of its witnesses traveling from Canada.

## A.    Cost Of Attendance For Willing Witnesses Heavily Favors Transfer To NDCA

The "'single most important factor in [the] transfer analysis'" is the convenience and cost for witnesses to travel and attend trial. *Genentech, Inc.*, 566 F.3d at 1343 (citation omitted). Courts "routinely afford more weight to the convenience and cost for non-party witnesses," but "'also appropriately consider[] the cost of attendance of *all* willing witnesses.'" *Polaris Innovations, Ltd. v. Dell, Inc.*, No. SA-16-CV-451-XR, 2016 U.S. Dist. LEXIS 167263, at *22 (W.D. Tex. Dec. 5, 2016) (citation omitted) (emphasis in original). Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004) ("*Volkswagen I*"). This factor strongly favors transferring this case to NDCA. *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (finding witness convenience factor "clearly favors transfer" where "[a] substantial number of party witnesses . . . reside in or close to the [NDCA]").

Numerous potential Google witnesses, including engineers and product managers knowledgeable regarding the development and operation of the relevant runtime components of GKE and Cloud Run work in NDCA or the Seattle, Washington area:

- Wenlei He, Uber Tech Lead for Cloud Run's ██████████, in Sunnyvale, California (Cloud Run Decl., ¶ 2);

- Blithe Rocher, Engineering Manager of Cloud Run's ██████████ in San Francisco, California (*id.*, ¶ 4);

- Jeremie Lenfant-Englemann, a Software Engineer and Tech Lead ██████████, and on the ██████████ team, in San Francisco, California  (*id.*, ¶ 4);

- Hatem ElAraby, Engineering Manager of Cloud Run's ██████████, in San Francisco, California (*id.*, ¶ 5);

- Ben Marks, a Software Engineer and Tech Lead on Cloud Run's ██████ ██████████████ in San Francisco, California (*id.*, ¶ 5);

- Steren Giannini, Group Product Manager for Cloud Run, in Sunnyvale, California (*id.*,, ¶ 6);

- Prathima Devarasetty, tech lead manager for the ████████████████ in Sunnyvale, California (GKE Decl., ¶ 2);

- Zhen Wang, a Software Engineer on the ████████████████ in Sunnyvale, California (*id.*, ¶ 4);

- Ning Liao, a Software Engineering Manager of the ██████████████, ████████, ████████████████████, in Kirkland, Washington  (*id.*);

- Jago Macleod, Director of Engineering in GKE, ██████████████████, worked on the development and operation of GKE since March 2017, and ████ ████████████████████████████ in 2019-2020 and from January 2024 to present, in Sunnyvale, California (*id.*, ¶ 8);

- Tim Hockin, a Software Engineer ██████████████████████ ████████████ in Sunnyvale, California (*id.*, ¶ 9); and

- Dawn Chen, a Software Engineer in GKE, ██████████████████ ██████████████ in Sunnyvale, California. *Id.*, ¶ 7.

Additionally, Andrew Tucker, inventor on a Sun Microsystems patent regarding early container technology (*see supra* Background § III), is also in NDCA.

For these Google employees and many of their team members, "it is more convenient [] to testify at home" in NDCA.  *See Volkswagen II*, 545 F.3d at 317.  There is no direct flight from the Bay Area or the Seattle, Washington Area to Midland-Odessa.  Traveling to Midland-Odessa from the Bay Area requires at least four or five hours of travel time (including a layover), not including time spent traveling to and from and waiting at the airport.  QE Decl. Ex. 44.  Long traveling time means witnesses will inevitably need to stay in Midland-Odessa overnight if they were to testify at trial.  Aside from the long trips to Midland-Odessa, overnight stays will greatly disrupt the professional and personal lives for these employees while "being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317.  "[T]he task of scheduling fact witnesses so as to

minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour." *Volkswagen I*, 371 F.3d at 205. So if this case is transferred to NDCA, the relevant Google witnesses there can practically testify "at home," as they could easily travel back and forth between the court and their homes within "30 minutes [to] an hour," as opposed to days of traveling to and from Midland-Odessa. *Id.* Even for the Google witnesses in Washington state, NDCA would require less travel time. QE Decl., Exs. 54, 55. Thus, NDCA is also far more convenient for Google witnesses in the Seattle, WA area.

With respect to other witnesses in countries outside the U.S., Federal Circuit "cases have emphasized that when there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer." *In re Google LLC*, Case No. 2021-170, 2021 WL4427899, at *4 (Fed. Cir. Sept. 27, 2021). This is because witnesses located far from either forum "will likely have to leave home for an extended period" whether or not the case is transferred, and thus would "only be slightly more inconvenienced by having to travel to California than to Texas." *In re Apple*, 979 F.3d 1332, 1342 (Fed. Cir. 2020) (internal quotation marks omitted). Potential witnesses that reside neither near NDCA nor WDTX "will be inconvenienced by extensive travel regardless of the forum." *10Tales*, 2021 WL 2043978, at *4. These include, for example, VirtaMove corporate witness(es) in Canada, Google employees in Israel with knowledge of Migrate to Containers, to the extent they are ultimately relevant at all, and Google employees in Canada. If anything, the greater availability of flights to San Francisco (or other Bay Area airports) makes NDCA more convenient. For example, NDCA would be more convenient for VirtaMove and Google employees in Ottawa (if

they were to testify).  Travel from Ottawa to NDCA requires two flights.  Ex. 45.  Travel from Ottawa to Midland requires an extra flight and additional travel time.[5]  Ex. 46.  So the convenience of these witnesses does not tip the scale to WDTX.

Meanwhile, Google is currently not aware of any likely trial witness (of either party) who resides in WDTX.  Transfer is thus appropriate because Google has "identified a significant number of its own employees as potential witnesses who reside in the Northern District of California" while VirtaMove's "own employees will be coming from outside both districts." *In re Adobe Inc*., 823 F. App'x 929, 931 (Fed. Cir. 2020)); *see also In re Tracfone Wireless, Inc.*, 852 F. App'x 537, 538-539 (Fed. Cir. 2021) (finding that the convenience of witnesses favored transfer where "no party identified any witness residing in the Western District of Texas" and "several of [defendant]'s likely employee[s] resid[ed] in the transferee venue"); *eCardless Bancorp, Ltd. v. PayPal Holdings, Inc.*, 7:22-cv-00245-ADA-DTG, Dkt. 82 at 4 (W.D. Tex. Feb. 15, 2024) (Gilliland, Mag. J) (similar).

To the extent that any Google employees in Austin, Texas possess some amount of relevant knowledge, they would still need to travel over three hundred miles to reach the Midland-Odessa Division courthouse, which also favors transfer.  *See Mobile Data Techs. LLC v. Meta Platforms, Inc.*, No. 722CV00244ADADTG, 2023 WL 9051280, at *2 (W.D. Tex. Dec. 18, 2023) (Gilliland, Mag. J.) ("Notably, all the potential witnesses identified by MDT will have to travel well over 100 miles to reach the courthouse in the Midland-Odessa Division—even those located within this District.  As such, the Court finds this factor favors transfer").

---

[5]  United Airlines usually has a direct flight from Tel Aviv to San Francisco. It has currently halted these flights due the Israel-Hamas War, but may resume these flights in the fall. https://www.forbes.com/sites/geoffwhitmore/2024/02/22/united-airlines-to-resume-flights-to-tel-aviv/

B.        **Availability of Compulsory Process Favors Transfer to NDCA**

Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. And "when there is no indication that [the] witness is willing," the Court must presume that its subpoena power will be necessary to secure the witness' attendance. *In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (quoting *In re HP, Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014); *see also Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. March 28, 2013) ("Transfer is favored" where, as here, a transferee district like NDCA "has absolute subpoena power over a greater number of non-party witnesses."); *In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *4 (Fed. Cir. Jan. 19, 2022) (factor "tilt[s] strongly toward transfer because Netflix identified far more third-party witnesses in the [transferee] forum"); *In re Jupiter*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) (requiring consideration of prior-art witnesses in the transfer analysis); *Motion Offense, LLC v. Google LLC*, No. 6:21-CV-00514-ADA, 2022 WL 5027730, at *5 (W.D. Tex. Oct. 4, 2022) (holding that Federal Circuit precedent requires presuming that third-party prior art witnesses are unwilling to testify), citing *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021). The Federal Rules permit a court to subpoena witnesses to attend trial but that subpoena power is limited to "within 100 miles" of the courthouse or the "within the state" if the witness resides, is employed, or regularly transacts business in person within the state. Fed. R. Civ. P. 45(c)(1)(A)-(B).

Here, several potential third party trial witnesses are in NDCA. This includes prior art witnesses, discussed above. *Supra* Background § III. Witnesses with knowledge of the Docker technology VirtaMove has identified in this case are also located within or close to NDCA. *Id.*

Should a court need to "exercise its subpoena power in a manner that promotes convenience to the parties and witnesses," the NDCA courts can do that for many more relevant witnesses to this case than this Court can do.  *Am. Leather Operations, LLC v. Ultra-Mek, Inc.*, No. 3:13-CV-4496-N, 2014 WL 12584334, at *2 (N.D. Tex. Apr. 8, 2014).  This factor thus also weighs in favor of transferring.  *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021) ("[B]ecause these potential witnesses reside in Northern California, transfer ensures that the transferee court could compel these individuals to appear.")  And even if these third parties in NDCA are ultimately willing witnesses, NDCA would clearly be more convenient for them under the prior factor.

Google is not aware of any relevant third parties in WDTX that are likely to be trial witnesses.  And as noted above, one of the inventors, Donn Rochette, is around Dayton, Ohio.  The other two, Paul O'Leary and Dean Huffman, are in Canada.  Here too, to the extent they are or become willing witnesses, traveling to NDCA would likely be easier for any third party witnesses not in either NDCA or this District given the greater availability of flights to the San Francisco Bay Area.  For example, for Mr. Rochette in Dayton, Ohio, non-stop flights are available from Cincinnati and Columbus (both near Dayton) to San Francisco—but not to Midland.  QE Decl., Exs. 47-50.

### C.    Relative Ease Of Access To Sources Of Proof Favors Transfer To NDCA

"In patent . . .  cases, the bulk of . . . relevant evidence usually comes from the accused infringer." *In re Apple  Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citation omitted). "[W]hile electronic storage of documents makes them more widely accessible than was true in the past," whether documents can be accessed remotely does not render "the sources-of-proof factor irrelevant." *In re Juniper  Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) (citing *Volkswagen II*, 545 F.3d at 316).  The question properly focuses on "*relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original).

Here, the likely technical witnesses who work on the functionality that appears to be accused for GKE and Cloud Run are primarily in NDCA and the Seattle, Washington area. *Supra* Background § II. These potential Google witnesses create and maintain documents and source code related to their work on these accused products, and are thus potential document custodians for this case. *Id.* Further, as described above, key third-party witnesses, and correspondingly likely documentary evidence, are located, or are at least created and maintained, in NDCA. *Supra*, Background § III. *Mobile Data Techs. LLC*, 2023 WL 9051280 at *2 (Gilliland, Mag. J) (this factor "favors transfer" when "NDCA is the location of document custodians and where documents are created and maintained"), citing *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). In contrast, VirtaMove does not appear to have offices or employees in WDTX. *Supra*, Background § IV. This factor favors transfer as well.

### D. There Are No Practical Problems With Transferring This Case To NDCA

"[T]his Court has previously held that the last private interest factor favors transfer when most witnesses are present in the transferee forum and the plaintiff has no presence in the Western District." *Correct Transmission LLC v. ADTRAN, Inc.*, No. 6:20-CV-00669-ADA, 2021 WL 1967985, at *5 (W.D. Tex. May 17, 2021); *Greenthread, LLC v. Intel Corp.*, No. 6:22-CV-105-ADA, 2022 WL 17968760, at *10 (W.D. Tex. Dec. 27, 2022) (citation omitted) ("[T]he Federal Circuit has held that judicial economic considerations cannot 'negate[ ] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor.'").

As discussed above, Google's likely trial witnesses are in NDCA or the Seattle, Washington area, third-party witnesses are in NDCA, and significant evidence and relevant sources of proof are in NDCA. *Supra* Background § II, III. In contrast, Google is not aware of any likely trial witnesses in WDTX or within 100-miles of this Court, and VirtaMove has no

apparent witness (or presence in general) in WDTX or in Texas either.  *Supra* Background § IV.
The case is also at an early stage.  No non-venue discovery will occur until after the January 9,
2025 claim construction hearing.  Dkt. 34.  Google's Motion to Dismiss the Amended Complaint
(Dkt. 36) is still pending.  Thus, the Court has not yet expended significant judicial resources in
this case.

Further, as noted above (n.3), VirtaMove also has a pending case against Amazon in
WDTX in which it asserts the same patents asserted against Google.  In *In re Google*, the Federal
Circuit specifically noted that the existence of co-pending litigation was of limited importance
where "Google has a strong presence in the transferee district."  No. 2017-107, 2017 WL 977038,
at *2 (Fed. Cir. Feb. 23, 2017).  Also, Amazon has moved to transfer its case to NDCA. The
"Federal Circuit has suggested that it is an error to determine that this factor strongly disfavors
transfer based primarily on co-pending litigation with pending motions to transfer."  *Ecofactor,
Inc. v. Resideo Techs., Inc.*, No. W-22-CV-00069-ADA, 2022 WL 13973997, at *8 (W.D. Tex.
Oct. 21, 2022) (citing *In re Google Inc.*, 2017 WL 977038, at *2).

## III.    The Public Interest Factors Also Weigh In Favor Of Transfer

### A.    NDCA Has A Strong Local Interest In This Dispute

The NDCA has a strong local interest in this case, "because the cause of action calls into
question the work and reputation of several individuals residing in or near that district."  *In re
Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2008).  As discussed above, relevant
technical witnesses regarding GKE's and Cloud Run's functionalities for running containers are
primarily in NDCA and the Seattle, Washington area, as are those involved in the development of
open source Kubernetes.  *Supra* Background § II.  And as noted above, VirtaMove's allegations
appear to implicate the open source Docker technology, also developed in NDCA.  The strong
connection between what appears to be accused in this case and the NDCA means that it has a "far

18

stronger local interest in the case than the Western District of Texas." *In re Tracfone*, 852 F. App'x at 540; *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (the "research[], design[], and develop[ment]" of accused technology within the Northern District of California are "significant factors that give the Northern District of California a legitimate interest in adjudicating the cases 'at home'").

WDTX, in contrast, has no specific interest in this case. As discussed, VirtaMove has zero connection to WDTX. It has no apparent offices or personnel in WDTX. Moreover, VirtaMove's infringement allegations in its Complaints (to the extent they can be understood) have no apparent connection to WDTX that could not also be drawn to any other district. *See Volkswagen II*, 545 F.3d at 318 (noting these types of connections "could apply virtually to any judicial district or division in the United States; it leaves no room for consideration of those actually affected—directly and indirectly—by the controversies and events giving rise to a case"); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (finding that the transferor venue "ha[s] no more or less of a meaningful connection to this case than any other venue" where the accused products were "sold throughout the United States").

Here too, this factor favors transfer. *eCardless Bancorp, Ltd.*, 7:22-cv-00245-ADA-DTG, Dkt. 82 at 5 (Gilliland, Mag. J) (finding this factor favored transfer where plaintiff had "no connection to this district," and "the design and development of the [accused products] occurred in NDCA where [Defendant] is headquartered and has over 4,000 permanent employees").

### B.     The administrative difficulties flowing from court congestion

Based on statistics for the 2010 to 2024 period, the median time to jury trial in patent cases in NDCA is 28 months, versus 25 months in WDTX. QE Decl. Exs. 51, 52. Even if WDTX is slightly faster, such statistics carry "little weight" and "[i]t is well-settled law that § 1404(a) transfer cannot be granted solely because of court congestion." *In re Clarke*, 94 F.4th 502, 509-

19

510, 515.  Indeed, "the Federal Circuit has consistently told the Court to diminish the weight given to the docket-congestion factor," *Greenthread*, 2022 WL 17968760, at *10, and "has repeatedly noted that '[WDTX] and [NDCA] show no significant differences in caseload or time-to-trial statistics,'" *USTA Tech., LLC v. Google LLC*, No. W-22-CA-01214-XR, 2023 WL 4833481, at *6 (W.D. Tex. July 26, 2023) (citation omitted).  Further, "neither discovery nor a *Markman* hearing have occurred in this case" so "transfer at this stage of litigation would not likely create any meaningful delays."  *10Tales*, 2021 WL 2043978, at *5.  This factor should be neutral at best. Further, unlike NDCA, Midland has not yet established a track record of trying patent cases. Although more than eighty patent cases have been filed or assigned here in the last five years, no trials have occurred so far.  QE Decl., Ex. 52.

### C.     The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are also neutral.  Familiarity with the governing law is neutral, as both NDCA and WDTX are well versed in patent law.  *TS Tech*, 551 F.3d at 1320. There do not appear to be any issues of conflict of laws or application of foreign law.  The last public interest factor is therefore also neutral.

### <u>CONCLUSION</u>

For the foregoing reasons, the Court should transfer the case to NDCA, a clearly more convenient venue for this litigation.

Dated:  July 10, 2024

/s/ David A. Perlson
David A. Perlson (admitted *pro hac vice*)
davidperlson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:  (415) 875-6600
Fax:  (415) 875-6700

Deepa Acharya
deepaacharya@quinnemanuel.com
1300 I Street NW, Suite 900
Quinn Emanuel Urquhart & Sullivan, LLP
Washington, District of Columbia 20005-3314
Telephone:  (202) 538-8000
Fax:  (202) 538-8100


/s/ Katharine L. Carmona
Katharine Lee Carmona
Texas State Bar No. 00787399
kcarmona@jw.com
Jackson Walker L.L.P.
100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 (facsimile)

Erica Benites Giese
Texas State Bar No.  24036212
egiese@jw.com
1900 Broadway, Suite 1200
San Antonio, Texas 78215
(210) 978-7700
(210) 978-7790 (facsimile)

Nathaniel St. Clair, II
Texas State Bar No. 24071564
nstclair@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000
(214) 953-5822 (facsimile)

*Counsel for Defendant Google LLC*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on July 10, 2024,  I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to counsel for all parties of record.


 Dated:  July 10, 2024                    */s/ Katharine L. Carmona*
                                        Katharine Lee Carmona




**LOCAL RULE CV-7(G) CERTIFICATION**

Pursuant to the Local Rule CV-7(G), I hereby certify that, on July 8, 2024, Google emailed VirtaMove in a good faith attempt to resolve the instant matter by agreement. VirtaMove indicated it opposed Google's motion.


 Dated:  July 10, 2024                    */s/ Katharine L. Carmona*
                                        Katharine Lee Carmona