# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| VIRTAMOVE, CORP., | § | |
| Plaintiff, | § | Case No. 7:24-cv-00033-DC-DTG |
| | § | |
| v. | § | |
| | § | ███████████████ |
| GOOGLE LLC, | § | |
| Defendant. | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | <span style="color:red">**REDACTED PUBLIC VERSION**</span> |
| | § | |

**PLAINTIFF VIRTAMOVE, CORP.'S OPPOSITION TO
GOOGLE LLC'S MOTION TO TRANSFER (DKT. 49)[1]**

---

[1] Substantially similar legal disputes are raised in the *VirtaMove, Corp. v. Amazon.com, Inc.*
Motion to Dismiss or Transfer in 7:24-cv-00030-ADA-DTG.

# **TABLE OF CONTENTS**

I.   Introduction: Google's Motion Omits Relevant Witnesses and Evidence and Cannot Meet the Updated Burden of Proof ..................................................................................1

II.  Recent Fifth Circuit Changes to Transfer Law ...................................................................2

     A.   Fifth Circuit Law Controls On Procedural Transfer, Not Federal Circuit Law .......2

     B.   The 2024 Updated Burden of Proof Articulated by *In re Clarke*...........................2

     C.   *TikTok* Restores the "Rigid" 100-Mile Rule ..........................................................4

     D.   Local Interest Looks to *Events* that *Give Rise to the Suit* ......................................5

III. Google's Delay Weighs Slightly Against Transfer ............................................................6

IV.  Argument: The Private Interest Factors Weigh Against Transfer .......................................7

     A.   Many Willing Witnesses Weigh Against Transfer, and Google's Redundant Witnesses Are Unlikely To Appear ..........................................................................7

     B.   The Compulsory Process Factor Weighs Against Transfer...................................10

     C.   Ease of Access to Evidence Weighs Against Transfer ..........................................15

     D.   Other Practical Problems Weigh Against Transfer ...............................................16

V.   Argument: The Public Interest Factors Weigh Against Transfer .......................................17

     A.   The Local Interest Factor is Legally Neutral Because Infringement Occurs Nationwide, While Design and Development Are Irrelevant. ...............................17

     B.   A 16.2 Month Faster Time to Trial Greatly Weighs Against Transfer ..................18

     C.   Conflict of Laws and Familiarity With Governing Law Are Neutral ...................19

VI.  Conclusion .......................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Def. Distributed v. Bruck*,
    30 F.4th 414 (5th Cir. 2022) ............................................................................. 3, 5, 18

*Flypsi, Inc. v. Google LLC*,
    No. 6:22-cv-00031-ADA (W.D. Tex. July 19, 2022) ................................................ 4

*In re Apple Inc.*,
    52 F.4th 1360 (Fed. Cir. 2022) ............................................................................. 4

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020) ........................................................................ 4, 11

*In re Clarke*,
    94 F.4th 502 (5th Cir. 2024) ......................................................................... passim

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012) ............................................................................ 2

*In re Google LLC*,
    No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ............................... 5, 11

*In re Hoffmann-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009) ....................................................................... 6, 18

*In re Planned Parenthood Fed'n of Am., Inc.*,
    52 F.4th 625 (5th Cir. 2022) ........................................................................... 6, 15

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) .................................................................. 5, 6, 11, 18

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ................................................................. 2, 3, 5, 18

*Kajeet, Inc. v. Trend Micro, Inc.*,
    No 6:21-CV-389-ADA, 2022 WL 126490 (W.D. Tex. Jan. 12, 2022) ..................... 17

*Lynk Labs, Inc. v. Home Depot USA, Inc.*,
    No. 6:21-CV-00097-ADA, 2022 WL 1593366 (W.D. Tex. May 19, 2022) ............. 17

*Microchip Tech. Inc. v. U.S. Philips Corp.*,
    367 F.3d 1350 (Fed. Cir. 2004) ............................................................................ 2

*Panduit Corp. v. All States Plastic Mfg. Co.*,
    744 F.2d 1564 (Fed. Cir. 1984) ............................................................................ 2

*Peteet v. Dow Chem. Co.*,
   868 F.2d 1428 (5th Cir. 1989) ..................................................................................... 6

*Scramoge Tech. Ltd. v. Apple Inc.*,
   No. 6:21-CV-00620-ADA, 2022 WL 4595069 (W.D. Tex. Sept. 30, 2022) ............................. 4

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) ..................................................................................... 2

*Touchstream Technologies, Inc. v. Google LLC*,
   No. 6:21-cv-569-ADA (W.D. Tex. December 23, 2021) ........................................... 4

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
   546 U.S. 394 (2006) ..................................................................................... 2

*Webroot, Inc. v. AO Kaspersky Lab*,
   No. 6:22-cv-00239-ADA-DTG, 2024 WL 171705 (W.D. Tex. Jan. 16, 2024) ...................... 17

*Winner Int'l Royalty Corp v. Wang*,
   202 F.3d 1340 (Fed. Cir. 2000) ..................................................................................... 2

**Statutes**

35 U.S.C. § 271 ..................................................................................... 6, 18

**Other Authorities**

15 C. Wright, A. Miller & E. Cooper § 3844 ........................................................... 6

I.      **Introduction: Google's Motion Omits Relevant Witnesses and Evidence and Cannot Meet the Updated Burden of Proof**

Google's Motion to Transfer (Dkt. 49)[2] relies on outdated case law and speculates about west coast witnesses while ignoring relevant witnesses and evidence that will come from the east coast. VirtaMove's employees and evidence are located in east Canada. The latest Fifth Circuit law requires Google "clearly to demonstrate" that the NDCA is "clearly more convenient" by showing (1) "that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e. clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (emphasis original).

VirtaMove served interrogatories about Google's witnesses list and evidence list for trial, to which Google objected to as premature and unknown, writing that Google explicitly "reserves the right to amend" its witness list, prior art list, and evidence list in view of further discovery. Ex. 01 at 12–13, 15–16, 21–23.[3] Thus, Google is unsure whether the witnesses, evidence, or prior art in Google's motion will *actually* materialize at trial, and Google might need to present other evidence/witnesses from locations closer to Texas. Google has, at best, presented a speculative list of witnesses/evidence for transfer-related purposes and omitted potentially relevant witnesses located closer to Texas. Google has not clearly demonstrated that a *significant* gain in convenience will result from transferring the case because Google does not know who or what will be *actually* presented at trial. Google's arguments relying on outdated and unpersuasive caselaw falls flat under the under the latest law from 2024 from the Fifth Circuit. The Court may deny Google's motion for a *per se* failure to meet its burden of clearly demonstrating that the identified witnesses and evidence will *actually* materialize at trial. Indeed, it is telling that Google failed to cite *In re*

---

[2] The served version of this document does not include the ECF header, so the motion is assumed to be Dkt. 49 rather than an attachment (e.g., assumed not Dkt. 49-1).

[3] All ## exhibits filed herewith. *See* Decl. of Mackenzie Paladino, filed herewith.

*Clarke* at all for the burden of proof. Dkt. 49 at ii, 19–20.

## II.    Recent Fifth Circuit Changes to Transfer Law

### A.    Fifth Circuit Law Controls On Procedural Transfer, Not Federal Circuit Law

In 2023–2024, the Fifth Circuit reigned in the Federal Circuit's misapplications of transfer law. Transfer law is a procedural matter, so Google's numerous Federal Circuit cases should be ignored when they conflict with controlling Fifth Circuit law.

"[M]otions to transfer, as a procedural matter, [are] governed by the law of the regional circuit in which [the district court] sits." *Winner Int'l Royalty Corp v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)); *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012) ("transfer motions are governed by regional circuit law"). "Where the regional circuit court has spoken on the subject, [the Federal Circuit] must apply the law as stated." *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75 (Fed. Cir. 1984); *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1356 (Fed. Cir. 2004) ("We are obligated to follow regional circuit law. . . ."). Unless an issue "pertains uniquely to patent law," the Federal Circuit is "bound to apply the law of the [regional] Circuit." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 398 (2006).

Google's reliance on conflicting Federal Circuit cases throughout its Motion should be ignored. *E.g.*, Dkt. 49 at 13, 15, 18-19.

### B.    The 2024 Updated Burden of Proof Articulated by *In re Clarke*

"[T]he plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the [venue] should be changed." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 n.10 (5th Cir. 2008). This is "a burden of proof question," and "it places a significant burden on the movant to show good cause for the transfer." *Id.* "It is the movant's burden—and the

movant's alone—to 'adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.'" *Clarke*, 94 F.4th at 508.

"[T]he fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer. In other words, the standard is not met by showing one forum is more likely than not to be more convenient, but instead the party **must adduce evidence** and arguments **that clearly establish good cause** for transfer based on convenience and justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (emphasis added).

> Accordingly, to establish "good cause," a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue.

*Clarke*, 98 F.4th at 508 (internal citations omitted, emphasis original).

In summary, Google has the sole evidentiary burden of *clearly* proving that the NDCA will result in *significant* convenience gains that will *actually* materialize at trial. *Id.* Google cannot meet this burden by speculating about or cherry-picking witnesses and evidence, without clearly knowing who or what will be presented at trial by both parties. For example, in the *Volkswagen* auto accident case, the universe of witnesses was easy to identify as the parties to the accident, the witnesses to the accident, and any doctors, mechanics, and experts the parties retain. *In re Volkswagen*, 545 F.3d at 317 ("Volkswagen has submitted a list of potential witnesses."). This burden of proof does not change for patent cases.

Pre-*Clarke* transfer motions would routinely involve inaccurate speculation. For example, in a recent case, Sony filed a transfer motion speculating about many potential witnesses and prior art early in a case, but as the case developed, it was revealed that 90.9% of Sony's predictions were

inaccurate. Ex. 02 at 4–7; *In re Sony Grp. Corp.*, No. 2024-140, 2024 WL 4344734, at *1 (Fed. Cir. Sept. 30, 2024) (affirming denial of transfer because "Sony failed to identify any physical evidence or unwilling witnesses there"—likely because, as argued, Sony's witnesses were speculative). This court previously expressed concern about such speculation. *See, e.g., Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-CV-00620-ADA, 2022 WL 4595069, at *1 (W.D. Tex. Sept. 30, 2022) ("Fact discovery will allow the parties to find the relevant evidence and witnesses that bear on the transfer factors rather than speculate about them."). Although the Federal Circuit disagreed (*In re Apple Inc.*, 52 F.4th 1360, 1362 (Fed. Cir. 2022)), the Sony case shows speculation is an ongoing problem, and *In re Clarke* confirms that this Court was correct to worry about inaccurate speculation.

Like Sony, Google has a history of inaccurate speculation in transfer motions. For example, in *Touchstream Technologies, Inc. v. Google*, Google called **none** of the third-party witnesses identified in its transfer motion. *Compare* Ex. 03 at 4 (identifying 7 prior art witnesses), *with* Ex. 04 (0% accuracy). In *Flypsi, Inc. v. Google LLC*, Google filed a transfer motion identifying "17 third-party witnesses," but Google's *total* witness count (party and nonparty) at trial was just merely 7. *Compare* Ex. 28 at 4, 9 *with* Ex. 29 (undetermined accuracy).[4]  The Court should be skeptical of continued, inaccurate speculation in Google's pending motion to transfer given the history of these Google's witnesses failing to *actually* materialize.

### C.    *TikTok* Restores the "Rigid" 100-Mile Rule

The Federal Circuit erroneously rejected a "rigid" application of the Fifth Circuit's 100-mile rule. *E.g., In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020) (finding that travel from NY to the WDTX or NDCA will requires the witness "to travel a significant distance no matter where

---

[4] The *Flypsi* Motion fails to make clear who the 17 witnesses are, except for Stuart West, who did not appear at trial.

they testify" when ignoring the "rigid" 100-mile rule); *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) (rejecting "rigid" 100-mile rule to consider the lack of a major airport in Waco and ruling that "time is a more important metric than distance."). The Fifth Circuit Opinion *In re TikTok, Inc.* ruled it is error when such analysis "ignores our 100-mile test." *In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023). The "rigid" *Volkswagen* 100-mile rule is now restored: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen of Am., Inc.*, 545 F.3d at 317. That is it—there is no analysis of airports, travel time, or anything besides distance. Google's arguments about flight times, travel method, and connecting airports are irrelevant under Fifth Circuit law, as such analysis improperly ignores the Fifth Circuit's rigid 100-mile rule.

### D.    Local Interest Looks to *Events* that *Give Rise to the Suit*

Google also relies on outdated Federal Circuit caselaw regarding the design and development analysis. Dkt. 49 at 18-19. *Clarke* restored the proper analysis of this factor by looking to the *events that give rise to a suit* (i.e. infringement), doing away with the "design and development" analysis articulated by the Federal Circuit.

> To identify localized interests properly, "[w]e look not to 'the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit.'" *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed*, 30 F.4th at 435).

*Clarke*, 94 F.4th at 511. The only event giving rise to this suit is infringement, and when it occurs nationwide, it is a "completely diffuse interest." Other connections are irrelevant.

> A completely diffuse interest—that is, an interest that "could apply to virtually any judicial district or division in the United States"—cannot affect the local-interest

determination. That's because the interest is the same in both the transferor and

transferee venue. These completely diffuse local interests net out to zero—neither

favoring nor disfavoring transfer.

*Id.* at 510. The design, research, and development of accused products do not give rise to

infringement under 35 U.S.C. § 271 and are instead carved out as experimental use. Thus, *In re*

*Clarke* restored the rule that "the sale of an accused product offered nationwide does not give rise

to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338

(Fed. Cir. 2009); *In re TikTok, Inc.*, 85 F.4th at 364–365 (finding that misappropriation of code in

copyright case took place in China, so this factor was neutral).

### III.    Google's Delay Weighs Slightly Against Transfer

VirtaMove filed its complaint on January 31, 2024. Dkt. 1. Google waited over **half a**

**year**—until July 10, 2024—and after the initial deadline of June 25 (Dkt. 34 at 1), before filing its

motion to transfer. Dkt. 49. Parties seeking a change of venue should act with "reasonable

promptness." 15 C. Wright, A. Miller & E. Cooper, *supra*, § 3844, at 335–37. Courts have

considered a party's delay in denying a motion to transfer. *Peteet v. Dow Chem. Co*., 868 F.2d

1428, 1436 (5th Cir. 1989). For comparison, the Amazon complaint was filed on January 26, 2024,

and Amazon filed its motion to transfer on June 7, 2024—more than a month before Google did.

Google's delay in filing its Motion should weigh slightly against transfer. *In re Planned*

*Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 63 632 (5th Cir. 2022) (affirming decision finding 7

month delay inexcusable and weighing against transfer).

## IV.     Argument: The Private Interest Factors Weigh Against Transfer

### A.     Many Willing Witnesses Weigh Against Transfer, and Google's Redundant Witnesses Are Unlikely To Appear

Not only does Google's Motion rely on outdated caselaw, but it also fails to consider the many willing witnesses who will find trial in the WDTX more convenient.

5 VirtaMove Witnesses. VirtaMove is a small company, so all five of its active employees (Nigel Stokes, Susan Cameron, Cedric Burgins, Steven Antoine, and Emanuel Sousa) likely have some relevant knowledge regarding VirtaMove's claims against Google, including the technical operation of VirtaMove's products, VirtaMove's sales, the value of the patented technology, and/or VirtaMove's documents. Ex. 05 at 11. They all reside in eastern Canada in the greater Toronto area (Ottawa, Toronto, or Arnprior), all of which are closer to Texas. Ex. 20; Ex. 21. They will find the WDTX more convenient under the rigid 100-mile rule.

Google's 2 Israeli Witnesses. VirtaMove agrees that both Israeli witnesses (Leonid Vasetsky, Eyal Yaron) identified in Google's Motion will have testimony at trial about Migrate to Containers. Dkt. 49 at 6, 13 ("Google employees in Israel with knowledge of Migrate to Containers"). This testimony is relevant because Migrate to Containers is explicitly identified as an accused product. Dkt. 49 at 2 n.1; Dkt. 45-1 at 2 (listing "Migrate to Containers" as an accused instrumentality). Israel is closer to the WDTX (7,234 miles) than to the NDCA (7,443 miles), so these witnesses will find trial in the WDTX more convenient under the rigid 100-mile rule. Exs. 11, 12. Google's argument NDCA is more convenient for Israel-based witnesses due to "greater availability of flights to San Francisco" relies on outdated caselaw. Dkt. 49 at 13. As addressed above, the controlling rule is that travel is directly proportional to the distance traveled, and flight availability is irrelevant to the analysis. *See* Section II(C), above.

5 Google Witnesses Closer to Texas. Google's Motion omits 5 relevant, willing witnesses (Allen, Tsvetanov, Akella, Rajaram, Villalba) located closer to WDTX. Bobby Allen is likely to appear at trial because ███████████████████████████████████████████████████████ ████████████████████ is led by Bobby Allen." Ex. 01 at 9.  Bobby Allen is in North Carolina. *Id.* The customer support team may have information about what customers desire most, an issue affecting damages.  For customer support testimony, ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ *Id.* at 9. █████████████████████████████████ ████████████████████████████ are Anand Akella, who works from Google's Atlanta office, and Rohini Rajaram, who works from Google's Pittsburgh, Pennsylvania office." *Id.* at 11. █████████████████████████████████████████████████ ████████ so they may have information relevant to future sales, which affects future damages. "Eddie Villalba, who works from Google's Austin, Texas office, ████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████" *Id.* Villalba is a likely candidate for past sales and past damages information at trial. All of these witnesses are closer to the WDTX and will find the WDTX more convenient under the rigid 100-mile rule.

(2/3) ████████████████████████████████. This team is "██████████████████████ ████████████████████████████████████" Ex. 01 at 10. "██████████████████████ ████████████████████████████████" are Aaron Rueth in Seattle, Fernado Rubbo in Sao Paolo, and Ameenah Burhan in Atlanta, Georgia. Georgia is closer Texas than to California. Sao Paolo is closer to the WDTX (5,293 miles) than to the NDCA (6,476 miles). Ex. 18; Ex. 19.

There is a 2/3 chance that the most knowledgeable ████████████████ member will find the WDTX more convenient under the rigid 100-mile rule.

Google's Witnesses Discounted. Google identifies several "potential" witnesses that appear closer to NDCA; however, Google's speculative witness list is insufficient to meet its burden under *In re Clark*. Google's inaccuracy is exemplified in its past motions to transfer. *See* Section II(B), above.

Redundant Witnesses. Google inflates the number of witnesses by identifying redundant witnesses for the same topics. It unlikely that all duplicative witnesses will actually materialize at trial. *See* Fed. R. Evid. 403 (excluding "cumulative evidence"). For example, the first six witnesses (Wenlei He, Blithe Rocher, Jeremie Lenfant-Englemann, Hatem ElAraby, Ben Marks, and Steren Giannini) are designated as Cloud Run witnesses. Given that many are ███████████████ ████, Google makes no argument about why all of them are needed at trial. Dkt. 49 at 3–4, 11–12. Google might call one 30(b)(6) witness about Cloud Run's operation, but it is highly unlikely that all six witnesses will *actually* materialize at trial. Similarly, Google identifies three ██████████ ████ witnesses (Prathima Devarasetty, Zhen Wang, and Jago Macleod) and two Kubernetes witnesses (Tim Hockin and Dawn Chen). *Id*. Once again, it is far more likely that only one technical 30(b)(6) witness will testify for each topic. *See* Exs. 04, 29 (averaging of 10.3 witnesses at Google trials, *including experts*). At best, the Court should treat Google's motion as identifying only 3 likely 30(b)(6) witnesses: one for each of Cloud Run, GKE, and Kubernetes.

3 Unlikely Witnesses. Dawn Chen, Jago MacLeod, and Tim Hockin are unlikely to materialize at trial. Devarasetty, the tech lead manager for ████████████████, testified that Dawn Chen is the "██████████████████████" indicating that Chen only has *general* knowledge of several unspecified teams and not any *specific* knowledge or evidence that would

be relevant to Kubernetes or GKE. Ex. 06 at 67:5–69:3. Given Chen's dispersed attention, it is unlikely that Chen has in depth knowledge of the accused technology. Additionally, Devarasetty did not know what Jago MacLeod (*Id.*, at 70:11–14) and Tim Hockin (*Id.*, at 71:8–10) would testify about during trial.

    <u>Unlikely AI Witness</u>. Google identified Ning Liao "of the ███████████," but Google has not explained what aspect of artificial intelligence is relevant to this case, beyond what the █████████████ can testify about. Dkt. 49 at 5. The whole ████████████ is unlikely to materialize at trial and should not be counted.

    <u>Other Sales/Support/Finance Witnesses Unlikely</u>. Google has about ████ sales employees, of which "approximately ███ employees work from Google's Austin, Texas Office." Ex. 01 at 10; Dkt. 49 at 6 n.2 (Google "has employees in Austin, Texas with Google Cloud sales, marketing, customer support, and finance positions (as it does in the Bay Area and Seattle area, as well)"). But because "Google does not anticipate that they will be trial witnesses called by either party," none of these ████ unnamed witnesses should weigh for or against transfer. Dkt. 49 at 6.n2.

    <u>Google's Admitted Uncertainty</u>. When VirtaMove asked Google to identify the witnesses it planned to call at trial, Google objected, stating that it was premature and too early, indicating that Google is not certain that it will call any of the witnesses to testify at trial. Ex. 01 at 12. In sum, the briefing identifies 14 likely witnesses who are closer to Texas, and about 3–4 non-redundant witnesses closer to California. Google has failed to meet its burden in showing that a *significant* gain in convenience will *actually* materialize by transferring this case. *Clarke*, 94 F.4th at 508. This factor weighs against transfer.

### B.    The Compulsory Process Factor Weighs Against Transfer

    Holding trial in Texas allows more of the relevant third-party witnesses to attend trial.

5 Former VirtaMove Witnesses With Declarations. Five former VirtaMove employees will only attend trial in Texas. Paul O'Leary and Dean Huffman are named inventors of the VirtaMove patents, and both reside in Kanata, Ontario, Canada. Ex. 07 ¶¶ 3–4; Ex. 08 ¶¶ 3–4. Chuck Colford was a former[5] CEO of VirtaMove, resides in Kanata, Canada. Ex. 09, ¶ 3–4. Mark Woodward is a former VirtaMove vice president of product engineering, and resides in Lyndhurst, Canada. Ex. 10, ¶¶ 2-3. Colford and Woodward may testify about the operation of VirtaMove's software, why its operation does not infringe IBM's patents, or the value of VirtaMove's software. Greg O'Connor is a former CEO of AppZero, and he lives in Massachusetts, not California (despite what LinkedIn may show). Ex. 13 ¶ 3–4. These five witnesses are only willing[6] to attend trial in Texas because it is closer and thus more convenient than the NDCA under the 100-mile rule. Exs. 7-10, 13 ¶¶ 3-4, 5–12.

Google argues that some of these witnesses will find the NDCA more convenient due to flight times and airport locations. In doing so, Google uses the non-rigid analysis from *In re Apple Inc.*, 979 F.3d 1341 and *In re Google LLC*, 2021 WL 4427899, at *4, even though the Fifth Circuit ruled that such analysis "ignores our 100-mile test." *In re TikTok, Inc.*, 85 F.4th at 361. Under the rigid 100-mile rule, O'Leary, Huffman, Colford, Woodward, and O'Connor are all closer to Texas and thus find it proportionally more convenient than the NDCA.

2 Former VirtaMove Employees in Texas. Additionally, two former VirtaMove employees, David Roth and Ernesto Benedito reside near Dallas, Texas and can only be compelled to attend trial in the WDTX. Ex. 05, at 11; Ex. 24; Ex. 25. Roth was a former CEO, and Benedito was a

---

[5] For simplicity, "former" individuals worked for VirtaMove Corp. or its predecessors AppZero and/or Trigence.

[6] They cannot be compelled in California but are willing to travel to Texas. If the Court does not count them under this factor, then they should count under the willing witness factor.

former Software Development Team Lead. Ex. 24; Ex. 25 They may know about the value or operation of the accused VirtaMove product during their respective historical tenures.

Google's Witnesses Inflated. When assessing this factor, the Court should discount Google's proposed third-party witnesses because Google has failed to clearly demonstrate that they will *actually* materialize at trial. Indeed, Google's motion presents "potential third-party trial witnesses"—but Google does not commit to identifying those who will *actually* materialize at trial. Dkt. 49 at 15. Google's arguments about "potential" third parties does not carry the burden of proof under *In re Clarke* to clearly demonstrate, with evidence, that a significant increase in convenience will *actually* materialize. Historically, Google inflates its third-party witness counts. *See* Section II(B) (tallying Google's historical 0% accuracy for third-party witnesses). Google similarly inflates its expected witness count now. Google attempts to inflate the third-party witness count with 1) authors of prior art that Google is unlikely to present at trial, and 2) Docker witnesses.

Unlikely Prior Art Witnesses. Google is unlikely to call **any** California-based prior art witness at trial because Google is unlikely to elect the relevant prior art for trial. Given the typical time pressures of a 1-week trial, Google will likely, at most, only assert its single best prior art at trial and call one prior art inventor. Google's Motion identifies the following 6 potential prior art references: FreeDSB (no California witness identified); Application 60/469,558 and Pat. 7,437,556 to Tucker (Dkt. 45-17); VMTP by Cheriton; "Supporting Ubiquitous Computing…", Pub. 2002/0133529, and Pub. 2002/0138629 to Schmidt; and "Optimizing the Migration of Virtual Computers" by Sapuntzakis. Dkt. 49 at 7–8. Google has dropped its right to assert the Tucker-based prior art because no "Tucker" prior art is listed in Google's invalidity contentions. Ex. 14 at 8–14. Thus, Tucker[7] and his co-inventors (Beck and Price) will not appear at trial as prior art

---

[7] Moreover, Tucker is a Google employee and does not require subpoena power to compel.

witnesses. Similarly, Google has dropped "VMTP" by Cheriton, as neither "VMTP" nor "Cheriton" are found in Google's contentions. *Id*. at 8–14.

Google's invalidity contentions against the '814 Patent identifies 9 patents/publications (3 including Schmidt), 6 nonpatent publications (2 naming Sapuntzakis/Schmidt), and 5 system prior art (including 1 "FreeBSD"). Ex. 14 at 8–14. Google's invalidity contentions against the '058 Patent include 41 patents/publications (3 naming Schmidt),[8] 11 nonpatent publications (2 naming Sapuntzakis/Schmidt), and 5 system prior art (1 "FreeBSD"). *Id*. at 8–14.  The relevant Schmidt/Sapuntzakis/FreeBSD prior art makes up only 6 of the 20 (30% of) prior art references against '814 Patent and only 6 of the 57 (10.5% of) prior art references against the '058 Patent. Google has not even proven by a preponderance that it will *even select*, as its best reference for trial, prior art for which a California-based inventor is even relevant. This fails to meet the even higher burden of clearly demonstrating that, not only will the prior art be selected, but that the author will have something to add to it at trial.

Google also fails to address the fact that inventors for two other patents identified as prior art are located in Texas (5,708,811 ("Arendt") and 5,845,118 ("Gheith")). Exs. 14 at 8; Ex. 15, cover (field [75]); Ex. 16, cover (field [75]). Their Texas presence further weighs against the already small weight (if any) to be given to California-based prior art inventors. So, unless Google's upcoming reply commits to limiting its prior art to the Schmidt/FreeBSD/Sapuntzakis references and disavowing the other prior art, the Court need not credit any prior art witnesses given the high burden of proof imposed by *In re Clarke*.

Unlikely Docker Witnesses. Google failed to show that the Docker founders (Kamel

---

[8] Schmidt co-author Hanko are lumped together for calculations.  Same for Sapuntzakis and co-authors Lam and Rosenblum.

Founadi, Soloman Hykes, and Sebastian Pahl[9]) and third-party Docker engineers (Tonis Tiigi and Derek McGowen) possess any relevant testimony or evidence. For example, Google relies on the declaration of Estes from the *Amazon* case (Dkt. 49 at 6 n.3) for the relevance of Tiigi, but when Estes was deposed, he had no clue why Tiigi would be relevant at trial. Ex. 26 at 59–63.

In fact, the open-source Docker reference is not the accused product—it is Google's specific implementation of Docker that is the accused product. The open-source Docker witnesses identified in Google's Motion may have independently developed open-source Docker, but independent development is not a defense to infringement. Docker is not asserted as prior art. These witnesses may know how the open-source version of a third-party Docker operates, but Google has not designated any of them as 30(b)(6) corporate representatives on the operation of *Google's specific* implementation of open-source technology. *See* Ex. 01 at 19–20 (Google evading a clear answer after nearly 2 pages of objections and qualifications). Indeed, Devarasetty testified that ██████████████████████. Ex. 06 at 32:8–34:18. For Docker-related testimony, it is far more likely that to call one of its own engineers. At trial, experts will opine on whether Google's *specific* deployment of Docker infringes. Google's evidence does not carry the burden of clearly demonstrating that Docker founders or third-party Docker engineers will materialize at trial.[10]

In conclusion, there are 7 third party witnesses who will only attend trial in Texas. Google is unlikely to call a prior art witness or Docker witness, and even if Google did, this factor would

---

[9] Pahl lives in Seattle, beyond the subpoena power of the NDCA.

[10] Further, Google alleges that VirtaMove "specifically identifies Docker's 'writable container layer' and 'base image' functionalities in its PICs." Motion at 6 fn 3. Testimony relevant to this allegation would not come from Tiigi or McGowan, but likely from Google's Migrate to Containers engineers, who are based in Israel. *See e.g.*, Ex. 17 at 16:20-22. Israel-based witnesses are located closer to WDTX than NDCA, and therefore, WDTX is the more convenient forum. Exs. 11-12.

still weigh against transfer.

### C.    Ease of Access to Evidence Weighs Against Transfer

VirtaMove has evidence in eastern Canada that can be more easily transported to the WDTX than to the NDCA. Specifically, VirtaMove has physical evidence relevant to this case at its Kanata, Ontario, Canada office. Some of VirtaMove's patent files are kept in paper form in two heavy boxes. Ex. 22. VirtaMove's source code is access controlled and limited to its employees and to Mark Woodward in Ontario, Canada, except that a copy of the source code was made available for inspection at the offices of Russ, August & Kabat and Kirkland & Ellis in Dallas, Texas in compliance with Judge Gilstrap's Docket Control Order. Ex. 27; Ex. 30 at ¶ 10.

Google argues that GKE and Cloud Run evidence weighs against transfer, but Google fails to identify any specific physical evidence that is harder to bring to WDTX. Docker is publicly available open-source project, meaning their history is documented on public repositories. *See* https://github.com/orgs/docker/repositories (Docker repository); Ex. 06 at 30:21–31:7 (Kubernetes is available on open-source repository). In the unlikely event that open-source Docker or Kubernetes code are needed at trial, an expert will be able to download the open-source code just as easily from either district. *In re Planned Parenthood*, 52 F.4th at 632 (affirming district court that "found that the vast majority of the evidence was electronic, and therefore equally accessible in either forum.").

Google also states that technical witnesses "primarily in NDCA and the Seattle, Washington area[]" that "create and maintain documents and source code related to their work on these accused products[.]" Dkt. 49, at 17. However, Google does not identify any specific physical evidence or "documents" in their possession that will materialize at trial. Google's witnesses testified that they are unaware of *any* physical evidence related to Cloud Run, GKE, Kubernetes, or Migrate to Containers. Ex. 06 at 28:5-15 (testifying that he is unaware of any physical evidence

relevant to this case); 23:1-25:2 (testifying that he is unaware of any no physical evidence related to GKE or Kubernetes); Ex. 17 at 25:1-4 (testifying that there is no physical evidence related to Migrate to Containers). Rather, the witnesses testify that all evidence is electronically stored and shared with common file-sharing tools like Google Drive. Ex. 17 at 12:12–13:12 ("This is the web service. So we just access it from anywhere we need."), 18:12–14; 23:9–16; Ex. 06 at 23:13–17. Google offers no reason why the electronic evidence identified in this matter would be *significantly* more difficult to access in Texas compared to California.

Google has the burden of *clearly* demonstrating that it is *significantly* more convenient to hold trial in California based on the ease of access to evidence. *Clarke*, 94 F.4th 508. Google has failed to meet this burden. Google failed to identify any physical evidence that may materialize at trial. Ex. 01 at 26. Google offers no venue evidence about the quantity of trial evidence Google has in California, nor does Google allow the Court to meaningfully compare the difficulty of moving Google's evidence to the WDTX against the difficulty of moving VirtaMove's evidence across the country from Ontario to California. The Court cannot actually assess whether or not trial in California will be *significantly* more convenient in terms of moving or accessing trial evidence, so this factor cannot weigh in favor of transfer. If anything, the Court should weigh this factor against transfer due to VirtaMove's evidence in eastern Canada.

### D.     Other Practical Problems Weigh Against Transfer

VirtaMove's case asserting the same patents against Amazon remains pending in this Court. Thus, transferring only the Google case will only burden another court in the NDCA with learning about the complex technology in VirtaMove's patents. Keeping the Google case allows this Court to conduct a joint *Markman* hearing for Google and Amazon, where the Court need only learn the patented technology once. Similar efficiency arises at the summary judgement stage, where this Court will be familiar with VirtaMove's patents if motions for summary judgment of invalidity or

noninfringement are filed in both the Google and Amazon case. Keeping the Google and Amazon cases together in the WDTX will also reduce the likelihood of any conflict conflicting claim construction decisions. Thus, this factor weighs against transfer. *Kajeet, Inc. v. Trend Micro, Inc.*, No 6:21-CV-389-ADA, 2022 WL 126490, at *6 (W.D. Tex. Jan. 12, 2022) ("the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer.").

While Amazon moved to transfer, its motion fails for the same reasons as Google's—it does not offer any degree of assurance that transfer will be *significantly* more convenient, and that the convenience will *actually* materialize at trial. Thus, both Amazon and Google are unable to meet the updated burden of proof from *In re Clarke*. Therefore, this factor weighs against transfer.

Google invites this Court to commit legal error by double counting the location of witnesses. Dkt. 49 at 17 (arguing under this factor that "most witnesses are present in the transferee forum and the plaintiff has no presence in the Western District"). The Court may not double-count the witnesses under two different factors. *See Webroot, Inc. v. AO Kaspersky Lab*, No. 6:22-cv-00239-ADA-DTG, 2024 WL 171705, at *6 (W.D. Tex. Jan. 16, 2024) ("It is important to avoid 'double counting' witnesses under both the compulsory process and willing witness factors."); *Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-CV-00097-ADA, 2022 WL 1593366, at *10 (W.D. Tex. May 19, 2022) ("The Court declines Home Depot's request to double-count the sources-of-proof factor").

## V. Argument: The Public Interest Factors Weigh Against Transfer

### A. The Local Interest Factor is Legally Neutral Because Infringement Occurs Nationwide, While Design and Development Are Irrelevant.

The local interest factor is neutral because both Google's products and VirtaMove's products are sold nationwide. *See* Ex. 01 at 11 ("field sales teams across all of North America");

*Hoffmann-La Roche*, 587 F.3d at 1338 ("[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue."); *In re Volkswagen*, 545 F.3d at 316 (citizens of Texas "would be interested to know whether there are [at-issue] products offered for sale in close proximity to the Marshall Division.").

As explained in Section II(D) above, the Fifth Circuit did away with the analysis of the Federal Circuit's erroneous "design and development" analysis because these neither "design" nor "development" are "events that gave rise to a suit" for patent infringement under 35 U.S.C. 271. *Clarke*, 94 F.4th at 511 (citing *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed*, 30 F.4th at 435))). Google does not cite any Fifth Circuit case with "design and development" analysis. Instead, Google relies on outdated, conflicting Federal Circuit cases, but Fifth Circuit cases control on the procedural issue of transfer. *See* Section II(A). Thus, the location of the design, development, or testing of Kubernetes, Cloud Run, or Docker are irrelevant to this factor unless Google can show that these acts give rise to infringement under Section 271.

*In re TikTok* affirmed that the local interest factor was neutral when copyright infringement occurred in China, 85 F.4th at 364–365 (finding that misappropriation of code in copyright case took place in China, so this factor was neutral). Here, infringement occurs nationwide.

### B.      A 16.2 Month Faster Time to Trial Greatly Weighs Against Transfer

This Court set this case for trial on February 2, 2026—a date this Court is better positioned to evaluate. Dkt. 34; *In re Clarke*, 94 F.4th at 510.  This case is proceeding to trial ahead of recent statistics in this District. Ex. 23 at 6 (32.7 median months to civil trial). Although statistics are no longer dispositive, this case appears to be proceeding so much faster than in the NDCA (48.9 median months to trial) such that this factor can only weigh against transfer. *Id.* at 10. Google's statistics (Dkt. 45-44 and 45-45) use unreliable, outdated information from back through 2010.

### C.     Conflict of Laws and Familiarity With Governing Law Are Neutral

VirtaMove agrees with Google that these factors are neutral.

## VI.    Conclusion

In conclusion, both the private and public factors weigh against transfer, and Google has failed to carry the burden of clearly proving under *In re Clarke* that a marginal gain in convenience will be *significant* and *actually* materialize.  Google's transfer motion should be denied.


Dated: October 3, 2024                    Respectfully submitted,


By: */s/ Qi (Peter) Tong*

Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Marc A. Fenster (CA SBN 181067)
mfenster@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
James A. Milkey (CA SBN 281283)
jmilkey@raklaw.com
Amy E. Hayden (CA SBN 287026)
ahayden@raklaw.com
Jacob Buczko (CA SBN 269408)
jbuczko@raklaw.com
James Tsuei (CA SBN 285530)
jtsuei@raklaw.com
Christian W. Conkle (CA SBN 306374)
cconkle@raklaw.com
Jonathan Ma (CA SBN 312773)
jma@raklaw.com
Daniel B. Kolko (CA SBN 341680)
dkolko@raklaw.com
Mackenzie Paladino (NY SBN: 6039366)
mpaladino@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: (310) 826-7474

Qi (Peter) Tong (TX SBN 24119042)
**RUSS AUGUST & KABAT**
4925 Greenville Ave., Suite 200
Dallas, TX 75206
Telephone: (310) 826-7474

*Attorneys for Plaintiff VirtaMove, Corp.*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that on October 3, 2024, I electronically filed the foregoing document using the CM/ECF system which will send notifications to all parties of record.  Additionally, a copy of the sealed filings are being sent to all counsel of record via e-mail.

October 3, 2024

/s/ Peter Tong
Qi (Peter) Tong
